2006-NMCA-043

132 P.3d 598

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Leroy ROYBAL, Defendant–Appellee.**

**No. 24,897.**

Court of Appeals of New Mexico.

Feb. 1, 2006.

Certiorari Denied, No. 29,684, March 30, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellant.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

FRY, Judge.

{1} The State appeals the dismissal of criminal charges against Defendant for lack of venue. Defendant was in Santa Fe County when a police officer clocked his car speeding and began pursuing him. Defendant pulled over and stopped just after crossing the county line into Rio Arriba County. There, he was arrested on an outstanding warrant. During an inventory search, the police discovered drugs and drug paraphernalia in his car. As a result, Defendant was charged in Santa Fe County with two counts of trafficking in a controlled substance. The trial court dismissed with prejudice the charges filed in Santa Fe County for improper venue, concluding that the charges should have been filed in Rio Arriba County where Defendant was stopped and the drugs were discovered. We hold that venue was proper in Santa Fe County because the crime of trafficking in a controlled substance by possession with intent to distribute is a continuing offense that was committed in both counties in which Defendant traveled while in possession of the drugs. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## DISCUSSION

### I. The State's Notice of Appeal Was Timely Filed

■ {2} Initially, we determine whether the State filed a timely notice of appeal from the trial court's dismissal of the charges. The timely filing of a notice of appeal is a mandatory precondition to this Court's jurisdiction and must be addressed even if neither party raises the issue. *Valley Bank of Commerce v. Hilburn*, 2005–NMCA–004, ¶ 12, 136 N.M. 741, 105 P.3d 294. Upon assigning this case to the general calendar, we instructed the parties to brief the issue of whether the State's notice of appeal was timely filed. We conclude that the notice was timely filed.

{3} Our review of the record establishes the following facts. After the State rested its case at trial, Defendant moved for a directed verdict on the ground that the State failed to prove that venue in Santa Fe County was proper. After hearing argument from both parties, the trial court granted Defendant's motion, concluding that Defendant's speeding violation was insufficient to establish venue in Santa Fe County for purposes of the trafficking charges, and that venue rested in Rio Arriba County where Defendant was stopped and the drugs were found.

{4} On November 19, 2003, two days after the jury trial was terminated, the trial court entered an order dismissing with prejudice all counts against Defendant on the ground that "the State's evidence failed to support a[v]erdict[.]" The dismissal order, as worded, appeared to be an acquittal on the merits and thus did not accurately reflect the trial court's oral ruling that the charges be dismissed for lack of venue. *See State v. Joe*, 2003–NMCA–071, ¶ 16, 133 N.M. 741, 69 P.3d 251 (explaining that a directed verdict, based on the State's failure to produce sufficient evidence to carry its burden at trial, amounts to an acquittal); *see also State v. Lopez*, 84 N.M. 805, 808–09, 508 P.2d 1292, 1295–96 (1973) (explaining that venue is not jurisdictional, and therefore, the defendant's motion for a directed verdict based on the state's failure to prove all essential elements of a prima facie case was insufficient to preserve venue objection); *State v. Wise*, 90 N.M. 659, 662, 567 P.2d 970, 973 (Ct.App.1977) (discussing that venue need not be proved beyond a reasonable doubt because it is not an essential element of the crime, but a personal right or privilege). On appeal, both parties agree that a dismissal for lack of venue is not an adjudication on the merits, *see Bracken v. Yates Petroleum Corp.*, 107 N.M. 463, 463, 760 P.2d 155, 155 (1988), *disagreed with on other grounds by Team Bank v. Meridian Oil Inc.*, 118 N.M. 147, 151, 879 P.2d 779, 783 (1994), and is thus distinguishable from a directed verdict of acquittal. *Cf. Joe*, 2003–NMCA–071, ¶ 16, 133 N.M. 741, 69 P.3d 251.

{5} On November 21, 2003, the State filed a motion to set aside the order of dismissal, arguing that (1) the order had been entered without first being submitted to the State for approval as required by Rule 5–121(D) NMRA; (2) the order, as entered, did not reflect the ruling of the trial court and was contrary to the applicable law; and (3) the order was signed by a judge other than the presiding judge. Along with the motion to set aside, the State filed a request for a presentment hearing.

{6} On November 26, 2003, the State also filed a motion to reconsider the trial court's ruling on venue. Defendant filed a response to both motions on December 11, 2003. Because no presentment hearing had yet been set by the trial court, the State filed a second request for hearing on February 5, 2004. The trial court finally heard both motions on March 23, 2004, approximately four months after the State's post-dismissal motions were filed. At the conclusion of the hearing, the trial court denied the State's motions but instructed the parties to prepare an amended order clarifying that the charges were dismissed with prejudice based upon the State's failure to prove that venue was proper in Santa Fe County. The amended order of dismissal, accurately setting forth the trial court's ruling on venue, was filed on March 25, 2004. The State's notice of appeal was filed on April 20, 2004, within thirty days of the amended order of dismissal but more than five months after the original dismissal order. Rule 12–201(A)(2) NMRA.

{7} In determining whether the State's appeal was timely filed, we consider the following questions: (A) whether the time for

appeal began to run from the original dismissal order and thus the State was required to appeal from that order; and (B) whether the State's motion to set aside and motion to reconsider tolled the time for appeal, thus allowing the trial court to have jurisdiction to enter the amended order of dismissal. For the reasons that follow, we conclude that (A) the time for appeal did not begin to run from the original dismissal order because that order was unappealable on its face and did not accurately reflect the trial court's ruling of improper venue, and (B) the State's post-dismissal motions suspended the finality of the original dismissal order and delayed the time for appeal until the trial court disposed of the State's motions. Therefore, the trial court had jurisdiction to enter the amended order of dismissal.

## A. The Time for Appeal Did Not Run From the Original Dismissal

■ {8} As discussed above, on November 19, 2003, the trial court entered an order upon Defendant's motion for directed verdict, dismissing with prejudice the trafficking counts on the ground that the State's evidence failed to support a verdict. On its face, the dismissal appeared to be an acquittal on the merits and thus was not appealable by the State. *See Joe*, 2003–NMCA–071, ¶ 16, 133 N.M. 741, 69 P.3d 251. When a defendant is acquitted of a charge, the double jeopardy clause prohibits a second prosecution on the same charge and thus bars appellate review of the final judgment. NMSA 1978, § 39–3–3(C) (1972) ("No appeal shall be taken by the state when the double jeopardy clause of the United States constitution or the constitution of the state of New Mexico prohibits further prosecution."); *State v. Archuleta*, 112 N.M. 55, 58, 811 P.2d 88, 91 (Ct.App.1991) (explaining that the double jeopardy clause does not permit an appeal of a judgment of acquittal, "whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict" (internal quotation marks and citation omitted)). Consequently, on its terms, the first order of dismissal did not appear to be appealable by the State.

■ {9} As the transcript of the trial reveals, however, the trial court did not intend to acquit Defendant of the charges but rather sought to dismiss the charges based upon a determination that the State failed to prove that venue was proper in Santa Fe County. *Compare Joe*, 2003–NMCA–071, ¶ 16, 133 N.M. 741, 69 P.3d 251 (stating that a trial court's determination that the state did not produce sufficient evidence to carry its burden constitutes a judgment of acquittal), *with Wise*, 90 N.M. at 662, 567 P.2d at 973 (explaining that venue is not an essential element of a crime but "a personal right or privilege of the accused which may be waived"). In dismissing the action for improper venue, the trial court fully anticipated that the State would appeal the ruling on venue and encouraged such an appeal, believing the venue question to be one of first impression in New Mexico. *See Ledbetter v. Webb*, 103 N.M. 597, 604, 711 P.2d 874, 881 (1985) (indicating that the trial court's verbal comments can be used to clarify ruling). However, the dismissal, as entered by the trial court, not only precluded an appeal by the State but incorrectly stated the legal basis for dismissal.

[4] {10} The State argues that it should not have been required to file a notice of appeal until it obtained an order that correctly set forth the trial court's ruling and was final and appealable on its terms. We agree. Because the first dismissal order failed to accurately state the basis for dismissal, and the State sought to appeal the trial court's ruling on venue, the State had both an interest and a duty to obtain an order that correctly set forth the substance of the trial court's ruling before appealing. *State v. Rojo*, 1999–NMSC–001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (" 'Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [trial] court's judgment.' " (quoting *In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 19, 121 N.M. 562, 915 P.2d 318)); *see State v. Jim*, 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct.App.1988) (noting that it is the appellant's burden to bring up a record sufficient for review of the issues presented on appeal).

{11} Moreover, where a final order is entered incorrectly through no fault of the State, we conclude that it would be improper to penalize the State for any delay in filing the notice of appeal caused by its attempt to reasonably and diligently correct the order prior to appealing. *Cf. Trujillo v. Serrano,* 117 N.M. 273, 278, 871 P.2d 369, 374 (1994) (determining that an untimely appeal should be heard when the actions of the court from which the appeal was taken caused the untimely filing). Here, it appears the dismissal order not only wrongly stated the basis for dismissal but was filed without the State's prior examination or approval, as required by Rule 5–121(D), and was signed by a district judge other than the presiding judge. We determine that, under these circumstances, the time for appeal should not commence to run from the original dismissal.

### B. The State's Post-dismissal Motions Suspended the Time for Appeal

{12} Further, in attempting to clarify and correct the first dismissal order, the State promptly filed a motion to set aside the dismissal. NMSA 1978, § 39–1–1 (1917) (providing the district court with jurisdiction for thirty days after entry of judgment). The State filed the motion to set aside the order of dismissal on November 21, 2003, two days after the original dismissal order was entered. The State also promptly filed a motion to reconsider on November 26, 2003. Although the motion to reconsider cited no provision authorizing the motion, the State presumably sought reconsideration of the trial court's ruling based on the same statutory authority as the motion to set aside. Below, Defendant argued that no rule or statute permitted the State's motions.

{13} "Although Section 39–1–1 ordinarily is invoked in civil cases, it also applies to criminal proceedings." *State v. Gonzales,* 110 N.M. 218, 226, 794 P.2d 361, 369 (Ct.App.1990), *aff'd,* 111 N.M. 363, 805 P.2d 630 (1991). Under Section 39–1–1, "the district court retains control of its judgments and decrees for a period of thirty days after entry and for such further time as may be necessary to pass upon and dispose of any motion directed against a judgment or de-

cree." *Id.* However, as this Court recently clarified, Section 39–1–1 applies only to non-jury trial cases, as the plain language of the statute suggests. *Valley Bank of Commerce,* 2005–NMCA–004, ¶ 18, 136 N.M. 741, 105 P.3d 294; *see also Gonzales,* 110 N.M. at 226, 794 P.2d at 369 (determining that Section 39–1–1 authorized the State to seek reconsideration of a *pre-trial* motion to dismiss an indictment because no jury trial had occurred at that stage of the proceedings). Because, in this case, the dismissal was ordered after the State rested its case at the jury trial, Section 39–1–1 does not apply and provides no authority for the State's post-dismissal motions.

{14} This Court is unaware of any rule of procedure that specifically allows the State to file a motion to reconsider or set aside an order of dismissal in a criminal case. *See Gonzales,* 110 N.M. at 226, 794 P.2d at 369 (acknowledging that "our rules of criminal procedure do not expressly provide for motions for reconsideration of a judgment of dismissal"). Although the rules of criminal procedure contain a number of provisions allowing a *defendant* to obtain relief from a conviction or sentence, *see, e.g.,* Rule 5–614 NMRA (motion for new trial), Rule 5–801 NMRA (modification of sentence), Rule 5–802 NMRA (writ of habeas corpus), we find no corresponding provisions in the rules authorizing the *state* to reopen or reconsider a judgment or order of dismissal. *See generally State v. Peppers,* 110 N.M. 393, 395–96, 796 P.2d 614, 616–17 (Ct.App.1990) (discussing post-conviction relief afforded to defendants under the rules of criminal procedure).

{15} Nor may we resort to the rules of civil procedure to find support for the State's post-dismissal motions. The only instances in which the rules of civil procedure have been held to apply in a criminal matter are when the particular proceeding involved was arguably civil in nature. *See, e.g., State v. Nunez,* 2000–NMSC–013, ¶ 123, 129 N.M. 63, 2 P.3d 264 (determining that, in a forfeiture proceeding, the State may move to set aside a default judgment pursuant to either Rule 1–055(C) NMRA, or Rule 1–060(B) NMRA, so that the State may proceed in a single bifurcated criminal trial); *State v. Romero,* 76 N.M. 449, 452, 415 P.2d 837, 838 (1966)

(permitting the defendant in a criminal case to seek relief from a criminal judgment claimed to be void pursuant to Rule 1–060(B) because he filed a petition for writ of coram nobis, which at common law was civil in nature). We cannot say in this purely criminal case that the State's post-dismissal motions were authorized under the rules of civil procedure. *See State ex rel. Task Force of the Region I Drug Enforcement Coordinating Council v.1990 Ford Truck*, 2001–NMCA–064, ¶ 15, 130 N.M. 767, 32 P.3d 210 (noting that there is no procedure in criminal cases analogous to Rule 1–055(C) or Rule 1–060(B) for the state to set aside a plea agreement).

{16} Although there is no rule or statute expressly authorizing the State's post-dismissal motions in this case, we nonetheless find support for the motions in common law. In *Gonzales*, this Court, in determining that the trial court had authority to reconsider an order dismissing an indictment based upon the State's motion, relied in part on the common law doctrine and the policy considerations set forth in *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). *Gonzales*, 110 N.M. at 226, 794 P.2d at 369. In *Healy*, the United States Supreme Court explained that although there was no federal rule or statute expressly authorizing the state's motion to reconsider a dismissal of an indictment, such motions are "a traditional and virtually unquestioned practice" and serve judicial economy by permitting lower courts to correct possible errors and thus avoid time-consuming and potentially unnecessary appeals. 376 U.S. at 78–80, 84 S.Ct. 553; *see also State v. Lucero*, 2001–NMSC–024, ¶ 8, 130 N.M. 676, 30 P.3d 365 (indicating that federal case law is persuasive in interpreting our state rules of criminal procedure when they are essentially identical to the federal rules); *Gonzales*, 110 N.M. at 226, 794 P.2d at 369. Under *Healy*, a motion for reconsideration brought by the state within the permissible time for appeal renders the dismissal not final for purposes of appeal and suspends the time for appeal until the motion is decided by the trial court. 376 U.S. at 77–78, 84 S.Ct. 553; *United States v. Ibarra*, 502 U.S. 1, 6, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991).

{17} Applying the *Healy* doctrine to this case, we conclude that the State's timely motion to set aside and motion to reconsider suspended the finality of the original dismissal order and tolled the time for appeal until the trial court ruled on the motions. Although the State's motion to set aside was erroneously predicated on Section 39–1–1, it is the substance of the motion, and not its form or label, that controls. *See Century Bank v. Hymans*, 120 N.M. 684, 689, 905 P.2d 722, 727 (Ct.App.1995) ("The movant need not cite the provision authorizing the motion; the substance of the motion, not its title, controls."). Thus, the trial court had jurisdiction to enter the amended order of dismissal on March 25, 2004, and the time for appeal began to run on that date. The State's notice of appeal, filed within thirty days of the amended order of dismissal, was timely.

## II. Double Jeopardy Does Not Bar the State's Appeal

{18} Defendant argues that the State had no right to appeal because the trial court dismissed the charges with prejudice after Defendant had already been placed in jeopardy. Generally, the State may appeal from an order dismissing an indictment. § 39–3–3(B)(1). However, no appeal is allowed when the double jeopardy clause prohibits further prosecution of the defendant. § 39–3–3(C). We hold that the double jeopardy clause does not bar the State's appeal because although jeopardy attached once the jury was empaneled and sworn, jeopardy never terminated. *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 106, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (stating that "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense"); *see also County of Los Alamos v. Tapia*, 109 N.M. 736, 739–41, 790 P.2d 1017, 1020–23 (1990) (describing situations in which jeopardy may terminate after jeopardy has begun or attached).

{19} As discussed above, the trial court dismissed the charges based upon a

348 finding that the State failed to prove venue in Santa Fe County. Venue refers to the county or counties where a crime was committed. NMSA 1978, § 30-1-14 (1963); *Wise*, 90 N.M. at 662, 567 P.2d at 973. Venue is not an element of the crime charged and does not go to the guilt or innocence of the defendant. *See Wise*, 90 N.M. at 662, 567 P.2d at 973 (discussing that venue need not be proved beyond a reasonable doubt). Consequently, it may be established by a mere preponderance of the evidence. *State v. Nelson*, 65 N.M. 403, 410, 338 P.2d 301, 305 (1959). A dismissal based upon lack of venue, therefore, is not an adjudication of the merits and does not amount to an acquittal. *See State v. Arevalo*, 2002-NMCA-062, ¶ 6, 132 N.M. 306, 47 P.3d 866. Thus, ordinarily, double jeopardy is not implicated by a dismissal for lack of venue. *See also Archuleta*, 112 N.M. at 58, 811 P.2d at 91 (explaining that the double jeopardy clause prohibits an appeal of a judgment of acquittal).

{20} This case, however, presents two complications with respect to double jeopardy, which we address briefly. First, as noted above, the trial court initially entered a dismissal that erroneously issued a directed verdict for Defendant. In *State v. Vaughn*, 2005-NMCA-076, ¶ 9, 137 N.M. 674, 114 P.3d 354, this Court explained that under the doctrine of double jeopardy a defendant cannot be retried "after a verdict of acquittal, even if that verdict is egregiously erroneous." *See also State v. Rodriguez*, 2004-NMCA-125, ¶ 14, 136 N.M. 494, 100 P.3d 200 (holding that double jeopardy prohibited the re-trial of the defendant even though the jury mistakenly returned a verdict of acquittal and issued a new and corrected verdict within minutes), *cert. granted*, 2004-NMCERT-010, 136 N.M. 542, 101 P.3d 808. Thus, in this case, it could be argued that the trial court's first dismissal order, although erroneously entered and subsequently amended, precludes the State's appeal under the double jeopardy clause.

{21} However, "what constitutes an acquittal is not to be controlled by the form of the judge's action. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a reso-lution, correct or not, of some or all of the factual elements of the offense charged[.]" *Vaughn*, 2005-NMCA-076, ¶ 9, 137 N.M. 674, 114 P.3d 354 (internal quotation marks and citation omitted); *cf. Martinez v. Friede*, 2004-NMSC-006, ¶ 27, 135 N.M. 171, 86 P.3d 596 ("The substance of the order controls, not its title or form."). In this case, there is no question that the trial judge did not decide any factual elements of the trafficking charges, and simply dismissed for lack of venue. Therefore, we conclude that double jeopardy is not implicated by the trial court's original, erroneous dismissal order.

{22} Second, we consider what effect, if any, the timing of the dismissal has on the State's right to appeal. Defendant apparently first challenged venue at jury selection and raised the issue again at the start of trial before the jury was sworn in. The trial court, however, reserved ruling on the issue until the close of the State's case in chief. In dismissing the case, the trial court was correct in observing that jeopardy had already attached. "Jeopardy attaches in a jury trial when the jury is empaneled and sworn[.]" *Tapia*, 109 N.M. at 737 n. 1, 790 P.2d at 1018 n. 1.

{23} In *Tapia*, our Supreme Court confronted the exact question presented in this case: whether the State's appeal is barred when jeopardy has attached but the trial is aborted by a ruling of the trial court before the fact-finder has determined the guilt or innocence of the defendant. In that case, the trial court ordered a dismissal of the criminal charge when it ruled, mid-trial, that the defendant's arrest was unlawful and that all evidence in support of the charge must be suppressed. 109 N.M. at 737, 790 P.2d at 1018. After thoroughly analyzing the policies underlying the double jeopardy clause, our Supreme Court concluded that further proceedings were not barred by double jeopardy. *Id.* at 739-44, 790 P.2d at 1020-25. The Court discussed, with approval, United States Supreme Court precedent and case law from other jurisdictions, holding that double jeopardy is not offended when a mid-trial dismissal results from a "trial error" raised by the defendant's objection, as opposed to a factual determination of the guilt

or innocence of the defendant. *Id.* at 738–41, 790 P.2d at 1019–22. In that situation, jeopardy has attached but has not terminated with respect to the charged offense. *See Vaughn,* 2005–NMCA–076, ¶ 8, 137 N.M. 674, 114 P.3d 354 ("Jeopardy begins or attaches when the trier of fact is empowered to decide guilt or innocence and jeopardy terminates upon an acquittal, a conviction, or with certain types of mistrial."). The Court also noted that the right to be free from double jeopardy is not an absolute right. *Tapia,* 109 N.M. at 742, 790 P.2d at 1023. Based on the principles discussed in *Tapia,* we hold that the State's appeal, and any proceedings on remand, are not barred by double jeopardy. *See also Arevalo,* 2002–NMCA–062, ¶ 7, 132 N.M. 306, 47 P.3d 866; *State v. Davis,* 1998–NMCA–148, ¶¶ 14–16, 126 N.M. 297, 968 P.2d 808.

{24} In a final argument that double jeopardy bars the State's appeal, Defendant maintains that the prosecutor acted with willful disregard for the consequences of his misconduct by continuing to prosecute in Santa Fe County even after being informed that venue was problematic in Santa Fe County. Citing *State v. Breit,* 1996–NMSC–067, ¶ 15, 122 N.M. 655, 930 P.2d 792, Defendant argues that due to prosecutorial misconduct, the trial court's dismissal with prejudice was appropriate, and double jeopardy bars the State's appeal. Defendant's argument is without merit. While it is true that Defendant first raised his venue objection at jury selection, and the State was therefore alerted to the potential venue problem before jeopardy attached, it was not misconduct for the State to continue prosecuting in Santa Fe County, particularly when the trial judge himself found the venue issue to be unclear and novel and declined ruling on it until after the State rested at trial. Thus, in light of the trial court's own actions and our reversal of the venue question on appeal, we reject Defendant's argument.

### III. Venue Was Proper in Santa Fe County

{25} Finally, we turn to the merits of the appeal. The State argues that the trial court erred in dismissing the charges against Defendant for improper venue. The parties disagree on the applicable standard of review. The State urges us to apply de novo review, while Defendant contends that we must review the trial court's dismissal for abuse of discretion. We conclude that the trial court's dismissal raises questions of law that we review de novo. *See Williams v. Bd. of County Comm'rs of San Juan County,* 1998–NMCA–090, ¶ 28, 125 N.M. 445, 963 P.2d 522 ("The motion to dismiss for improper venue raises a question of law, which we review de novo.").

{26} Defendant was charged in Santa Fe County with two counts of trafficking in a controlled substance by possession with intent to distribute. Defendant was driving in Santa Fe County when a police officer clocked his car speeding and began following him. Defendant pulled over and stopped at a Sonic fast-food restaurant just after crossing the county line and upon entering Rio Arriba County. Because it was determined there was an outstanding warrant for his arrest, he was placed under arrest. During an inventory search of his car, the police discovered cocaine, heroin, and drug paraphernalia. At the close of the State's evidence at trial, and upon Defendant's motion for a directed verdict, the trial court dismissed with prejudice the charges filed in Santa Fe County for improper venue, concluding that the charges should have been filed in Rio Arriba County where Defendant was stopped and the drugs were discovered.

{27} As we discussed above, because venue is not an element of the crime charged, it may be established by a mere preponderance of the evidence. *Wise,* 90 N.M. at 662, 567 P.2d at 973; *Nelson,* 65 N.M. at 410, 338 P.2d at 305. "And when there is nothing in the record to raise an inference to the contrary, slight circumstances are sufficient to prove venue by a preponderance of the evidence." *Nelson,* 65 N.M. at 410, 338 P.2d at 305.

{28} The State argues that venue was proper in Santa Fe County because trafficking by possession with intent to distribute is a "continuing offense" which occurred in each county through which Defendant trav-

eled while in possession of the drugs. We agree, applying our Supreme Court's holding in *Marsh v. State*, 95 N.M. 224, 226, 620 P.2d 878, 880 (1980).

{29} In *Marsh*, the defendant flew a small plane carrying several hundred pounds of marijuana over Valencia County en route to McKinley County where he met with the co-defendant and the marijuana was unloaded. *Id.* at 225, 620 P.2d at 879. The defendants were charged in Valencia County with possession of marijuana with intent to distribute and conspiracy to commit a felony. *Id.* at 224, 620 P.2d at 878. Our Supreme Court held that venue was proper in Valencia County for both charges. *Id.* at 226, 620 P.2d at 880. In so holding, it agreed with this Court's reasoning "that venue was proper in Valencia County for the possession charge because a 'material element' of the crime was committed in Valencia County, and where there is a continuing crime, venue lies in any county through which the defendant travel[ ]ed." *Id.; accord State v. Chapman*, 252 Kan. 606, 847 P.2d 1247, 1251–52 (1993). Nonetheless, our Supreme Court went on to hold that "it would be more appropriate to try the case, if at all, in McKinley County where there is a more substantial nexus between the criminal acts and the county." *Marsh*, 95 N.M. at 226, 620 P.2d at 880. Thus, invoking its power of superintending control, our Supreme Court remanded and ordered that the case be transferred to McKinley County as the more proper venue. *Id.*

{30} Defendant argues that, when a crime is committed in multiple counties, *Marsh* mandates that the state prosecute in the most proper venue, and therefore, the trial court properly dismissed the charges because Rio Arriba County had the most "significant contacts with the alleged criminal acts" of Defendant and was thus the more proper venue. *Id.* at 227, 620 P.2d at 881. However, we do not read *Marsh* as justifying the trial court's dismissal or requiring the state to prosecute a continuing crime case in the venue with the greatest weight of the contacts.

{31} "All decisions regarding the venue of a criminal trial are guided by the constitutional guarantee of a fair and impartial trial." *State v. House*, 1999–NMSC–014, ¶ 26, 127 N.M. 151, 978 P.2d 967. The New Mexico constitution and the venue statute provide only that the defendant is entitled to a trial in the county or district in which the crime was alleged to have been committed. N.M. Const. art. II, § 14; § 30–1–14. For purposes of a continuing crime, venue is proper in any county in which the continuing conduct has occurred. *Cf. United States v. Barnard*, 490 F.2d 907, 910 (9th Cir.1973) (stating the rule that venue is proper in any federal district in which continuing conduct has occurred); *see also Marsh*, 95 N.M. at 226, 620 P.2d at 880. Moreover, although Section 30–1–14 contains express provisions regarding venue as to crimes "committed in different counties," there is no specific language in the statute requiring the chosen venue to be the county with the "most significant contacts" or the "more substantial nexus" with the criminal acts of Defendant. *Marsh*, 95 N.M. at 226–27, 620 P.2d at 880–81; *see State v. Herrera*, 2001–NMCA–073, ¶ 10, 131 N.M. 22, 33 P.3d 22 (stating that we will not read language into a statute when it makes sense as written). To the contrary, Section 30–1–14 requires only that trial "be had in any county in which a material element of the crime was committed."

{32} It is significant to point out that, in *Marsh*, the Supreme Court ordered that venue be transferred to McKinley County under its power of superintending control. 95 N.M. at 226, 620 P.2d at 880. This Court does not have that authority. *See* N.M. Const. art. VI, § 3 (vesting exclusive superintending control in the Supreme Court over all inferior courts); *Albuquerque Gas & Elec. Co. v. Curtis*, 43 N.M. 234, 236, 89 P.2d 615, 616 (1939) (stating "the power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise" (internal quotation marks and citation omitted)). Moreover, in ordering the transfer, the Supreme Court was compelled by certain policy considerations that do not appear to be implicated in this case. *Marsh*, 95 N.M. at 226–27, 620 P.2d at 880–81. In *Marsh*, "the only contact with Valencia County was the passage of the airplane carrying

the marijuana over it," which was incidental, while most of the purposeful contacts were with McKinley County, where the marijuana was located, the co-defendant was present, and the alleged conspiracy completed. *Id.* at 226, 620 P.2d at 880. In this case, the same criminal act of traveling with the drugs occurred in both counties, so it is not even clear that a more substantial nexus existed with Rio Arriba County. Moreover, because the continuing conduct in *Marsh* occurred by airplane and covered a much larger geographical area than in this case, there was a concern in *Marsh* that the prosecution was remote from the home of the defendant and witnesses. *Id.* at 227, 620 P.2d at 881; *see also House*, 1999–NMSC–014, ¶ 27, 127 N.M. 151, 978 P.2d 967. Finally, in *Marsh* there was evidence that the state's venue decision was based, in part, on a desire to avoid a potential conflict with a judge, while no such circumstance appears in the record of this case. 95 N.M. at 227, 620 P.2d at 881. Thus, where venue was established by a preponderance of the evidence in Santa Fe County, we hold that the trial court erred in dismissing the charges.

## CONCLUSION

{33} We conclude that the State's notice of appeal was timely filed and that double jeopardy does not bar the State's appeal. With regard to the merits of the appeal, we conclude that venue in Santa Fe County was proper as to the trafficking charges. Accordingly, we reverse the trial court's dismissal and remand for further proceedings consistent with this opinion.

{34} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.