The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 26, 2023

**No. A-1-CA-39757**

**MARIE HOVEY-JARAMILLO and
ANGELA JARAMILLO,**

Plaintiffs-Appellants,

v.

**LIBERTY MUTUAL INSURANCE
and UNKNOWN JANE DOE,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Daniel E. Ramczyk, District Court Judge**

Roybal Mack & Cordova, P.C.
Antonia Roybal-Mack
Amelia P. Nelson
Albuquerque, NM

for Appellants

Allen Law Firm, LLC
Meena H. Allen
Kerri L. Allensworth
Albuquerque, NM

for Appellees

# OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1} This case presents an opportunity to consider whether an insurance company has any duty in tort to its policyholders apart from its obligation to act honestly and in good faith in the performance of the contract as described in UJI 13-1701 to -1704 NMRA. Disagreeing with the district court's conclusion that Defendant Liberty Mutual Insurance (Liberty Mutual) and its employees "did not owe any legally cognizable duty to Plaintiffs," we reverse.

## BACKGROUND

{2} The facts are taken from Plaintiffs' complaint and Defendants' briefing in support of their motion for summary judgment. Plaintiff Angela Jaramillo (Daughter) was driving when her tire deflated and she was forced to pull to the side of the rode. Daughter could not use her telephone so a bystander let her use their phone to call Plaintiff Marie Hovey-Jaramillo (Mother) to ask for assistance. Daughter was unable to get out of her vehicle because of the fast-paced traffic outside of the driver's side door. Mother drove to Daughter and got into Daughter's car to assist her. Daughter's vehicle was insured by Liberty Mutual, and her coverage included "towing and labor coverage," which included roadside assistance in the event that Daughter's vehicle was disabled.

{3} While in Daughter's car, Mother called Liberty Mutual on behalf of Daughter to request roadside assistance. When Mother called, Defendant Jane Doe (the Operator) took down basic information and asked Mother for Daughter's license plate number. In response, Mother informed the Operator that she was unable to safely obtain the license plate number and said "I don't have it." Mother told the Operator she did not want to go behind the car because it was extremely dangerous and asked if it was necessary. The Operator demanded that Mother get the license plate number and stated that she needed the number to proceed.

{4} Mother then walked slowly to the back of the car. When Mother got to the back of the car, she was hit by another vehicle and sustained physical injuries.

{5} Plaintiffs filed a complaint against Liberty Mutual and the Operator making claims of negligence, respondeat superior, negligent hiring/retention, and loss of consortium all based on the Operator's negligence in failing to exercise reasonable care with regard to Mother's safety during the roadside assistance call. Liberty Mutual filed a motion for summary judgment arguing Plaintiffs failed to state a claim upon which relief could be granted. Liberty Mutual advanced two arguments to the district court. First, relying on *Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 1984-NMSC-107, 102 N.M. 28, 690 P.2d 1022, it asserted broadly that New Mexico does not recognize a cause of action for negligence against an insurer. Second, it argued generally that individuals have no duty to protect another

2

from harm absent a relationship that "legally obligates a defendant to protect a plaintiff's interest."

{6}    After briefing and without a hearing, the district court granted Liberty Mutual's motion and dismissed Plaintiffs' complaint with prejudice. Plaintiffs appeal.

**DISCUSSION**

**Standard of Review**

{7}    We start by addressing our standard of review. Plaintiffs appeal the district court's decision that was based on Defendants' motion for summary judgment. The district court recognized that there was a factual dispute regarding whether the Operator or another Liberty Mutual employee compelled Mother to act in such a way that resulted in injuries. But the district court concluded that it was "not a material issue of fact insofar as the controlling law of this case is concerned." It determined that Liberty Mutual "did not owe any legally cognizable duty to Plaintiffs" during the accident in question. Thus, the district court's decision is more aptly reviewed as a Rule 1-012(C) NMRA judgment on the pleadings. *Cf. State v. Roybal*, 2006-NMCA-043, ¶ 17, 139 N.M. 341, 132 P.3d 598 ("[I]t is the substance of the motion, and not its form or label, that controls.").

{8}    "We review judgments on the pleadings made pursuant to Rule 1-012(C) . . . according to the same standard as motions for failure to state a claim under Rule 1-

012(B)(6).” *Vill. of Angel Fire v. Bd. of Cnty. Comm'rs*, 2010-NMCA-038, ¶ 5, 148 N.M. 804, 242 P.3d 371. "In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (internal quotation marks and citation omitted). "Dismissal . . . is appropriate only if the plaintiff is not entitled to recover under any theory of the facts alleged in [his or her] complaint." *Id.* ¶ 12 (alteration, internal quotation marks, and citation omitted). We review the district court's Rule 1-012(C) ruling de novo. *See id.* ¶ 9.

**Duty**

{9}     On appeal, Liberty Mutual makes a slightly different argument than it made to the district court. It relies on *Ambassador*, 1984-NMSC-107, for the same proposition it did below. But it now argues more generally that Plaintiffs' failure to cite specific case law or other authority imposing a duty on it in this circumstance is fatal to their argument. We address the meaning and effect of *Ambassador* first, and then move on to consider the more general question of duty in this circumstance.

*Ambassador* **Does Not Preclude Application of Negligence Concepts in All Circumstances Against Insurers**

{10}     In *Ambassador*, the United States Court of Appeals for the Tenth Circuit certified the question of "[w]hether New Mexico recognizes negligent failure to settle as a cause of action?" to our Supreme Court. *Id.* ¶ 3. In the case, an excess

4

insurance carrier sued the primary insurance carrier for failing to settle a malpractice claim within its policy limits despite an offer to do so. *Id.* ¶ 1. The excess carrier's complaint alleged the primary carrier "negligently and in bad faith" failed to settle the underlying medical malpractice action. *Id*. The primary carrier moved for dismissal of the negligence claim. *Id.* ¶ 2. The district court granted the motion, but allowed the bad faith claim to be tried. *Id.* The jury found in favor of the primary carrier. *Id*.

{11}     Our Supreme Court determined "that New Mexico does not recognize the cause of action of negligent failure to settle." *Id.* ¶ 7. We, of course, have no quarrel with the holding, but the Court's dual rationale for its ruling can be misinterpreted. We conclude that Liberty Mutual has done so.

{12}     Our Supreme Court first noted that the district court had "interpreted *American Employers' Insurance Co. v. Crawford*, [1975-NMSC-020,] 87 N.M. 375, 533 P.2d 1203 . . . as holding that a claim for negligent failure to settle is not recognized by New Mexico courts." *Ambassador*, 1984-NMSC-107, ¶ 4. The Court disagreed with the district court's view. *Id.* ¶¶ 5, 6. It nevertheless chose to quote a sentence from the *Crawford* opinion—that it conceded was dicta—to support an inference that "New Mexico will interpret the duties between insured and insurer as based in contract rather than tort." *Ambassador*, 1984-NMSC-107, ¶ 5. The Court then noted the complications that would ensue if a "normal" negligence standard of

5

conduct was applicable: "the risk to the insured of going to trial would always be 'sufficiently serious' to merit automatic settlement within policy limits." *Id.* ¶¶ 8, 9. It then observed that, "The relationship between insurer and insured is a contractual one. The only duty imposed upon the insurer in the contract is the duty to *defend* the suit against the insured. It is left to the judgment of the insurer whether to settle the case or not." *Id.* ¶ 10. Noting that "New Mexico recognizes [the] duty of good faith between insurer and insured," *id.* ¶ 11, the Court ended the analysis by observing that: "Thus, when failure to settle the claim stems from a failure to properly investigate the claim or to become familiar with the applicable law, etc., then this is negligence in defending the suit (a duty expressly imposed upon the insurer under the insurance contract) and is strong evidence of bad faith in failing to settle. Here, basic standards of competency can be imposed, and the insurer is charged with knowledge of the duty owed to its insured." *Id.* ¶ 12.

{13} *Ambassador* does not control our inquiry. First, the issue in *Ambassador* involved the insurer's duty to settle cases on behalf of its insured. *Id.* ¶ 11. Thus, the case presented a now-classic insurance bad faith failure to settle scenario. *See* UJI 13-1704. The facts in this case simply do not involve a bad faith issue. The facts here raise issues about the propriety of Liberty Mutual's initial actions as it responded to a request for its towing service. Factually and conceptually, the issues and concerns

inherent in providing such a service are distinct from the concerns addressed by the covenant of good faith and fair dealing.

{14}    Second, the discussion of negligence in *Ambassador* was not general or abstract. Our Supreme Court specifically addressed whether negligence concepts should be applied to instances of failure to settle. *Ambassador*, 1984-NMSC-107, ¶ 3. At the time *Ambassador* was decided, the implied covenant of good faith and fair dealing had been recognized and applied in New Mexico. *Id.* ¶ 11. The contours of the implied covenant in New Mexico were as yet not clear in 1984, but the Court recognized that the concept had gained broad acceptance in other states. *Id.* ¶ 5. As such the issue before the Court was in large measure whether it was necessary or appropriate to add another potential avenue of relief for aggrieved insureds. *Id.* ¶ 11. The Court appropriately compared and contrasted the way a "normal" negligence action might proceed with the way the implied covenant was already functioning. *Id.* ¶¶ 8-11. Using an approach that foretold *Rodriguez v. Del Sol Shopping Center Associates, L.P.*, 2014-NMSC-014, ¶¶ 1, 19, 326 P.3d 465, the Court decided that it was unnecessary—and would be unwise—to add a negligence theory on top of the implied covenant of good faith and fair dealing. *Ambassador*, 1984-NMSC-107, ¶ 11.

{15}    That said, the decision not to allow use of negligence concepts in situations already addressed by the implied covenant implies nothing about the potential

7

applicability of negligence to other aspects of insurance company activities. The policy reasons set forth in *Ambassador* are not implicated here. *See id.* ¶¶ 8-11. And that portion of opinion regarding a duty to settle did not involve or address any other issues. *Id.* ¶¶ 4-13. As such, relying on *Ambassador*—as Liberty Mutual does—for the broad proposition that "New Mexico does not recognize a cause of action for negligence against an insurer" is inaccurate and improper. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{16}    Though it is a bit of a stretch, it is possible to be misled by the repeated reference in *Ambassador* to the contractual foundation of the relationship between insurers and policy holders and the Court's stated caution about imposing duties "not expressly provided for in the contract of insurance." 1984-NMSC-107, ¶ 11. Those references—grounded as they are in the dicta from *Crawford* the Court elected to cite, *Ambassador*, 1984-NMSC-107, ¶ 5—signal the Court's caution about blurring the divide between contract and tort law. The contours of insurance bad faith are now well defined, belying the *Ambassador* Court's concern.

{17}    It is now clear that insurance bad faith claims are treated as torts in New Mexico. The introduction to Chapter 17 of our jury instructions refers to "the tort of bad faith." Uniform Jury Instructions-Civil, Bad Faith, Intro. ch. 17 NMRA. And

our case law makes clear that insurance bad faith claims sound in tort. In *Jessen v. National Excess Insurance Co.*, 1989-NMSC-040, ¶¶ 7, 8, 108 N.M. 625, 776 P.2d 1244, our Supreme Court reviewed a punitive damage award arising from a trial in which the jury was instructed on breach of contract and bad faith theories. Our Supreme Court upheld the punitive damage award, holding that it was appropriate under either the contract or tort claim. *Id.* ¶ 8. The Court noted that it had recognized the tort of bad faith as early as 1974 in *State Farm General Insurance Co. v. Clifton*, 1974-NMSC-081, ¶ 6, 86 N.M. 757, 527 P.2d 798. *Jessen*, 1989-NMSC-040, ¶ 8; *see Chavez v. Chenoweth*, 1976-NMCA-076, ¶ 31, 89 N.M. 423, 553 P.2d 703 (describing the plaintiff's claim as "a tort claim for unreasonable delay in paying medical expenses"); *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 13, 135 N.M. 106, 85 P.3d 230 (referring to the "tort of insurance bad faith" generally). In this regard, our Supreme Court's caution in *Ambassador*, 1984-NMSC-107, ¶¶ 8-11, was misplaced, if not unfounded. Thus, the language of *Ambassador* does not now support the sweeping effect Liberty Mutual ascribes to it. We doubt that it ever did.

**{18}** Liberty Mutual relies on three unreported cases decided by the federal district court in New Mexico. We first note that we are not bound by federal court decisions purporting to interpret New Mexico state common or statutory law. *See In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 29, 140 N.M. 879, 149

9

P.3d 976 (stating that "[New Mexico Courts] are not bound by federal law when we interpret state law"). Nevertheless, we accord them the deference they merit based on our view of the correctness of their analysis of our law.

{19} We agree with the holding in *Fava v. Liberty Mutual Insurance Corp.*, No. 17cv00456 WJ/LF, 2019 WL 133269, at *6, *7 (D.N.M. Jan. 8, 2019). The dispute in *Fava* arose from an unresolved claim for water damage to a home. *Id.* at *1. The district court dismissed the plaintiffs' negligence claims relying on *Ambassador*. *Id.* at *5-7. We agree with the dismissal because the case involved the direct processing of a claim under an insurance policy. *Id.* at *1, *6 n.3. The complaints plaintiffs listed concerning the adjustment of the claim were directly related to the fulfillment by the insurer of its obligations under the policy. *Id*. The claim would fall under the bad faith failure to pay a first party claim as described in UJI 13-1702. But, the case is not relevant here. As we have noted, the facts here do not involve issues related to Liberty Mutual's obligations to settle, defend, or pay a first party claim.

{20} We disagree with the holding and analysis in *Baca v. ACE American Insurance Co.*, No. 15-0151 KG/KBM, 2016 WL 10538192 (D.N.M. Apr. 15, 2016). The plaintiff in *Baca* sought to bring a negligence action against a medical case manager for mistakes and misrepresentations he made with regard to the efforts he made and/or said he would make in helping the plaintiff receive care for her work-related injuries. *Id.* at *1, *2. The case manager was not an employee of the insurer.

*Id.* at *1. Rather, he was a fourth-tier employee of a company hired to provide case management services. *Id.* The facts in *Baca* are thus far afield from the facts in *Ambassador*. We do not see any reason why the concepts of insurance bad faith should be applied in favor of persons or entities simply providing contractual services to an insurer. Nothing in *Ambassador* requires its application to someone who does not have a direct insurer relationship to a plaintiff.

{21}    We also disagree with the holding in *Grasshopper Natural Medicine, LLC v. Hartford Casualty Insurance Co.*, No. CIV 15-0338 JB/CEG, 2016 WL 4009834 (D.N.M. July 7, 2016). *Grasshopper* presented a complicated factual situation involving a workers compensation claim that the insurer refused to accept because the insured's coverage had lapsed before the incident in which the worker was injured. *Id.* at *2-4. There is no need to detail the convoluted factual and litigation posture of the case. Most relevant to this case, the plaintiffs in *Grasshopper* asserted that the insurer was negligent in that it: (1) sent the renewal notice to the wrong address, (2) failed to follow up with a telephone call or letter concerning the need to renew the policy, (3) failed to advise the plaintiff of the need to buy workers compensation insurance when the cancellation was discussed, (4) failed to defend the plaintiffs in the suit brought by the worker, and (5) provided help to the worker during the adjustment of her claim. *Id.* at *37. The court dismissed all of the claims based on *Ambassador*. *Grasshopper*, 2016 WL 4009834, at *33-39. We conclude

11

that it erred in dismissing the first three claims. There is nothing in *Ambassador's* concerns or analysis that precludes them. The result also seems contrary to *Stock v. ADCO General Corp.*, 1981-NMCA-075, ¶ 18, 96 N.M. 544, 632 P.2d 1182, in which this Court upheld a judgment against an insurer and an insurance broker for negligence in issuing a policy that deviated from the one applied for, and in failing to follow the insurer's practice of attaching a red-flag notification of a restrictive endorsement.

**Liberty Mutual Had a Duty of Care as a Service Provider**

{22}    We start our analysis with the statement of duty present in our jury instructions since at least 1984. "Every person has a duty to exercise ordinary care for the safety of the person and the property of others." UJI 13-1604 NMRA. Though UJI 13-1604 fits well within the definition of duty in Section 7 of the Restatement (Third) of Torts, the perceived movement in New Mexico "towards a public policy that defines duty under a universal standard of ordinary care," *Yount v. Johnson*, 1996-NMCA-046, ¶ 4, 121 N.M. 585, 915 P.2d 341, did not take hold immediately. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7(a) (2010) ("An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm."). Foreseeability continued to be a factor in defining duty, forcing the analysis into the framework described in footnote 1 of *Calkins v. Cox Estates*, 1990-NMSC-044, ¶ 8 n.1, 110 N.M. 59, 792 P.2d 36.

{23}     In *Rodriguez*, our Supreme Court fully adopted Section 7 of the Restatement (Third) of Torts and declared that foreseeability is not a factor when courts assess the existence or scope of a duty. *Rodriguez*, 2014-NMSC-014, ¶¶ 1, 4. "The duty of ordinary care applies unless the owner/occupier can establish a policy reason, unrelated to foreseeability considerations, that compels a limitation on the duty or an exemption from the duty to exercise ordinary care." *Id.* ¶ 5; *see Morris v. Giant Four Corners, Inc.*, 2021-NMSC-028, ¶¶ 12, 47, 498 P.3d 238 (extending the tort of negligent entrustment to include sales of gasoline to intoxicated drivers); *Lopez v. Devon Energy Prod. Co.*, 2020-NMCA-033, ¶¶ 19, 22, 23, 31, 33, 468 P.3d 887 (holding that framing the duty of hirers of independent contractors as exceptions to a general rule of non-liability was improper because the hirer had direct duties of general care under premises liability principles and under the theory of negligent selection/retention of contractors).

{24}     A similar dynamic is at work here. In this context Liberty Mutual is offering a service to the travelling public: towing and roadside assistance. The issue in this case is whether an insurance company offering such a service has a duty to render those services with reasonable care. Though this specific factual context has not been dealt with before in New Mexico, we conclude that such a duty fits squarely within the law expressed in UJI 13-1604 and the common law duty of service providers. We explain.

13

{25}    New Mexico recognizes the general common law rule that persons providing services owe a duty that "arises both from a common-law duty to exercise ordinary care for the safety of the person of others and from an implied term of the contract to render services with reasonable skill and care." *Flores v. Baca*, 1994-NMSC-021, ¶¶ 9, 10, 117 N.M. 306, 871 P.2d 962; *id.* (holding that the funeral home owed tort and contract duties to the surviving children as a result of its improper embalming of their father's body). Without explicitly acknowledging the rule, New Mexico has already applied it in the insurance field. *See Stock*, 1981-NMCA-075, ¶ 18; *Talbot v. Country Life Ins. Co.*, 291 N.E.2d 830, 832 (Ill. App. Ct. 1973) ("It has been suggested that the duty of an agent to use care in dealing with the application may be based on the principle, familiar in negligence cases, that one who enters upon an affirmative undertaking, to perform a service for another, is required to exercise reasonable care in performing it, to avoid injury to the beneficiary of the undertaking. Insurance agents who take applications, particularly where they receive premiums, may be said to have entered definitely upon a course of affirmative conduct, and be liable for misfeasance if they unreasonably delay."); *see also Cleveland Indians Baseball Co. v. N.H. Ins. Co.*, 727 F. 3d 633, 638-39 (6th Cir. 2013) (holding that under Michigan law a contracting party has a separate duty of care to those who might be harmed by its negligent acts or omissions even if not in privity with the actor); *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242-43 (R.I. 1990);

14

*Reed v. Dupuis*, 920 A.2d 861, 865-67 (Pa. 2007) (holding that the tenant had a cause of action in tort for injuries suffered as a result of the landlord not completing repairs to home as promised).

**{26}** The responsibility to exercise reasonable care in providing services is normally imposed as a tort when a failure results in physical harm to the plaintiff. *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 655-59 (5th ed. 1984).

**{27}** Under *Rodriguez* and Section 7 of the Restatement (Third) of Torts, our task now is to explore whether there are policy reasons to refuse to recognize the duty here. *Rodriguez*, 2014-NMSC-014, ¶ 1. We have already determined there is nothing in the law of insurer liability as expressed in *Ambassador* that precludes imposition of a duty in this context. 1984-NMSC-107, ¶¶ 4-13. Our last inquiry then is whether there is anything about the general common law rule that argues against its application here. *Rodriguez*, 2014-NMSC-014, ¶ 1. We conclude that there is none.

**{28}** Apart from its reliance on *Ambassador*, Liberty Mutual's only argument is that Plaintiffs fail to identify any "controlling case law" that would impose a duty or any "policy considerations for why New Mexico should recognize that an insurer has a duty under the circumstances presented in this case." We disagree. As we have noted, there is a general concept of tort liability for physical harm caused by service providers even though the relationship between the parties emerges from a

15

contractual arrangement. *See* UJI 13-1604. That is all that is necessary to impose a duty of reasonable care. Like the plaintiffs in *Rodriguez*, Plaintiffs here "are not seeking a broadened standard of care; they simply contend that [Liberty Mutual] breached the duty of ordinary care." *See* 2014-NMSC-014, ¶ 15.

**CONCLUSION**

{29}    For the foregoing reasons, we reverse the district court and remand this matter for further proceedings in accordance with this opinion.

_____
**MICHAEL D. BUSTAMANTE, Judge, retired, sitting by designation**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**JANE B. YOHALEM, Judge**

16