871 P.2d 962

Maria Luisa FLORES, individually and as personal representative of the Estate of Hipolito Flores, deceased, David Flores, Abraham Flores, Guadalupe Jimenez, Elias Flores, Ezekiel Flores, Daniel Flores, Maria Rebecca Rager, Esperanza Landin, Eva Medina, Jesus Flores, Hipolito Flores, Jr., Josue Flores, and Rachel Ramirez, Plaintiffs–Appellants, Appellees,

v.

Sam BACA, d/b/a Baca's Funeral Chapels, Defendant–Appellee, Appellant.

Nos. 20782, 20790.

Supreme Court of New Mexico.

Feb. 23, 1994.

Rehearing Denied March 28, 1994.

Montgomery & Andrews, P.A., Sarah M. Singleton, Santa Fe, Guevara, Rebe, Baumann, Coldwell & Garay, Colbert N. Coldwell, El Paso, TX, for plaintiffs-appellants.

Gallagher, Casados & Mann, P.C., J.E. Casados, M. Clea Gutterson, Albuquerque, for defendant-appellee.

## OPINION

RANSOM, Justice.

Hipolito Flores died on July 9, 1989, survived by his widow, Maria Luisa Flores, and by thirteen children. A daughter, Rachel Ramirez, contracted with Sam Baca, doing business as Baca's Funeral Chapels, to prepare Hipolito's body and to perform funeral and burial services. Hipolito's body was exhumed for autopsy two weeks after interment, at which time the family discovered that the lower half of the body had not been embalmed. Maria and the children sued Baca on claims of breach of contract, negligence, fraud, intentional infliction of emotional distress, gross negligence, and outrage, seeking compensatory and punitive damages. The trial court dismissed all claims except for the breach of contract claim of Maria for emotional distress damages and of Rachel for monetary damages.

The jury returned a verdict of $500,000 in compensatory damages in favor of Maria and of $360 in favor of Rachel. On Baca's motion for new trial, the court set aside the judgment in favor of Maria and granted a new trial on the issue of damages only. At the second trial, the jury awarded Maria $100,000 in compensatory damages. On appeal, the children urge reversal of the orders and judgments dismissing their claims. Maria appeals a directed verdict on punitive damages. Baca appeals the judgment in favor of Maria, claiming the trial court erred in submitting Maria's breach of contract claim, in admitting hearsay evidence to support the damages claim, and in refusing to give an instruction limiting compensation to severe emotional distress. Having consolidated the appeals, we affirm the judgment awarding compensatory damages to Maria, reverse the directed verdict on punitive damages, and remand for further proceedings relative to punitive damages for Maria and compensatory and punitive damages for severe emotional distress as may be proved by any one or more of the surviving children.

*Facts.* In March 1989, Hipolito and Maria executed individual contracts with Guardian Plans, Inc. for prospective funeral and burial services to be provided by Baca Funeral Homes. The bottom of Hipolito's "Statement of Goods and Services Selected" reflected a handwritten notation stating: "Embalming expressly authorized." Maria testified that she insisted upon embalming when she and her husband arranged their pre-need funeral contracts because of strong negative

memories of her father's death and funeral. A disclaimer in the contract states: "No claims were made to me/us as to ... the effect that embalming ... would delay the decomposition of the remains for a long term or indefinite time...."

After Hipolito's death, Rachel made all of the funeral arrangements based upon the pre-need contract. She signed a separate contract containing the same disclaimer regarding the effect of embalming and paid for the funeral costs. Rachel's sisters and brothers shared equally in those costs. Whether Rachel was acting for other members of the family (as disclosed or undisclosed principals) by reason of the children's equal contributions to the cost of the funeral is a question raised in the briefs that becomes moot by reason of our approach to the duty issues involved.

Maria and the children testified that the funeral and burial services were satisfactory. Fifteen days after the funeral, Hipolito's body was exhumed for an autopsy. Some of Hipolito's sons were present at the disinterment. They testified at the first trial that they saw mold on the hands and a bloody purge of fluid from the mouth, nose, and ears of the deceased and smelled the stench of decay. Three sons accompanied the body to the autopsy and then reported back to the others the determinations of the medical examiners. The autopsy revealed that the embalming ended at about the waist. Decomposition included the sloughing of skin over the entire lower part of the body. When the body was returned to the funeral home for reinterment, Maria and several of the children smelled the decay coming from the garage where the casket was located. Maria could not view Hipolito's body again because of the overpowering smell and she later overheard her sons describing to her other children the condition of the body. At the first trial, Maria described her feelings of distress, including sleeplessness, lack of appetite, and depression. At the second trial, she testified to the loss of physical control of her body upon smelling her husband's body, crying, depression, and long-term emotional pain. Her children also testified that she had been depressed, suffered frequent crying spells,

and that she stated she felt her husband's body had been disgraced and dishonored. At the first trial, some of the children also testified about the emotional trauma they felt as a result of the experience, but this testimony was not allowed at the second trial.

At the first trial, testimony from experts (including Baca) established that an embalmer would know whether there was incomplete profusion of the embalming fluid by either looking at or touching the embalmed body. Baca testified that although he did not conduct the embalming himself, he reviewed the work of his employee by both visual inspection and by palpitating the extremities and believed it to be satisfactory. The medical examiner, however, testified that he had not seen a more inadequate case of embalming. None of this testimony was allowed at the second trial. There, the court instructed the jury that an incomplete embalming had been performed for which Baca was liable, and the children testified that their mother overheard them describe that the lower half of Hipolito's body had not been embalmed and that there was bloody purge on his face and pillow and mold on his hands.

*Summary of proceedings.* Baca filed a motion to dismiss all causes of action (except for the breach of contract claims of Maria and Rachel) for failure to state claims upon which relief could be granted. After a hearing on the motion, the court dismissed all causes of action except for Maria's claim of outrage, Rachel's claim for breach of contract, and claims sounding in bystander recovery for the children who were actually present at the exhumation. In a letter to counsel explaining its ruling, the court stated that only the widow had "quasi-property rights" in the body for tort actions, only the daughter Rachel had signed the contract for a breach of contract action, and undisclosed participants had no rights in the contract. Less than two weeks before trial, Baca filed (and the court heard) a motion for partial summary judgment. The court modified its earlier order to add that the children present at the exhumation also could present claims founded on the theory of "intentional infliction of mental duress [sic]." The children argued unsuccessfully that their claims were

not based on bystander recovery but on willful and wanton misbehavior in failing to embalm or at least in negligent mishandling of the corpse.

At trial, after the close of plaintiffs' case, the court directed a verdict on Maria's claim of outrage, but on its own motion reinstated her claim of breach of contract. The court also directed a verdict on the children's claims for negligence (that it couched as bystander claims) and intentional infliction of emotional distress, and on all claims for punitive damages; the court limited Rachel's claim to monetary damages for the casket liner and failure to embalm.

■ *Cause of action arising out of funeral and burial services.—Family members were third-party beneficiaries of the funeral contract.* Negligent services may give rise to claims for relief in both ordinary negligence and breach of contract. *Ruiz v. Southern Pacific Transp. Co.,* 97 N.M. 194, 200, 638 P.2d 406, 412 (Ct.App.), *cert. quashed,* 97 N.M. 242, 638 P.2d 1087 (1981). Consequently, when a promisor's misfeasance in the performance of a contract foreseeably may cause personal injury to an intended third-party beneficiary, the latter would have a cause of action in both tort and contract for personal injuries proximately caused by the misfeasance. *See* Restatement (Second) of Contracts § 304 (1979) (promise creates duty to intended beneficiary, who may enforce the duty); *Johnson v. Armstrong & Armstrong,* 41 N.M. 206, 210, 66 P.2d 992, 994–95 (1937) (unnamed third-party beneficiary may enforce contract). A stranger to the contract would have only a tort action for personal injuries proximately caused by an act, in the performance of a contract, which a reasonably prudent person would foresee as involving an unreasonable risk of injury to that person.

The reason the promisee or third-party beneficiary would have a cause of action in tort and contract is that the duty of the promisor arises both from a common-law duty to exercise ordinary care for the safety of the person of others and from an implied term of contract to render services with reasonable skill and care. *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 656–58 (5th ed. 1984). Contract liability to the promisee or third-party beneficiary for personal injuries proximately caused by misfeasance is dependent, therefore, upon the implied intent of the parties and upon the absence of an express contract provision to the contrary. "[T]he manifested intent of the parties, as ascertained through appropriate rules of construction, controls the obligations of the parties. But ... tort obligations are based on policy considerations apart from manifested intent...." *Id.* § 92, at 656.

■ There exists in New Mexico no recognized cause of action for negligent infliction of emotional distress except for bystander liability as adopted in *Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822 (1983). *See* SCRA 1986, 13–1630 committee comment (Repl.Pamp.1991) (no instruction drafted for cause of action for negligent infliction of emotional distress). Without reaching the question of whether to recognize a cause of action in tort for a funeral director's negligent infliction of mental distress to family members, we nevertheless hold that Baca assumed contract obligations to use reasonable skill and care to avoid severe mental distress to the family members of the deceased.

■ Although only Maria negotiated for embalming and only Rachel signed the final contract, it is common knowledge that contracts for funeral services are intended to benefit the family of the deceased. "[Funeral] services for which the ... family member contracts are rarely performed for the benefit of the contracting party alone." *Christensen v. Superior Court,* 54 Cal.3d 868, 2 Cal. Rptr.2d 79, 89, 820 P.2d 181, 191 (1991) (in bank); *see also Golston v. Lincoln Cemetery, Inc.,* 573 S.W.2d 700, 710 (Mo.Ct.App.1978) (holding that children and sister of deceased were all "immediate family" entitled to damages for mental anguish for intentional infliction of emotional distress where only one of the children and the sister had actually executed the funeral contract). In *Valdez v. Cillessen & Son, Inc.,* 105 N.M. 575, 734 P.2d 1258 (1987), we stated: "The paramount indicator of third party beneficiary status is a showing that the parties to the contract in-

tended to benefit the third party, either individually or as a member of a class of beneficiaries. Such intent must appear *either* from the contract itself *or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary.*" *Id.* at 581, 734 P.2d at 1264 (citations omitted) (emphasis added). The surviving family members may be *implied in fact* to be the intended beneficiaries of funeral and burial contracts. Certainly, in our society, the attention given the family by the funeral director is indicative of an understanding that the services are performed for the benefit of such survivors and a duty of reasonable performance is placed on the funeral director. This duty is owed at least to family members within the first degree of consanguinity and may extend to others for whose benefit the funeral expressly or knowingly is provided, but we do not reach the latter question under the facts of this case.

■ *—Contract claim was preserved.* Baca argues that the Flores children did not assert or preserve a contract claim for anyone other than Rachel Ramirez. We disagree. The first complaint stated claims for breach of contract and for negligence on behalf of all of the children. The children squarely presented the question to the trial court for a ruling and the court dismissed those claims. The children did not have to tender a jury instruction on breach of contract in order to preserve the issue for appeal because the trial court already had dismissed their claim. *See* SCRA 1986, 12–216 (Repl.Pamp.1991) ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked....").[1]

■ *—Damages for mental anguish caused by breach of a funeral contract are within the contemplation of the parties.* Courts permit recovery for mental anguish caused by the breach of a contract, especially in those cases in which the purpose of the

contract would be frustrated unless damages for mental anguish were awarded for breach.

Where the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered.

*Lamm v. Shingleton,* 231 N.C. 10, 55 S.E.2d 810, 813 (1949). "Burial cases furnish the most obvious example of cases in which the contract for decent treatment of a body seems to guarantee not merely a price but proper respect for feelings of survivors, so that emotional distress damages would seem to be recoverable...." 3 Dan B. Dobbs, *Law of Remedies* § 12.5(1), at 110 (2d ed. 1993). "If a contract is made for the very purpose of providing ... mental well-being, it is very likely that the defendant must have contemplated damages for a loss of that well-being in the event of breach." *Id.* § 12.5(1), at 113. Contracts for funeral and burial services are imbued by the very nature of their subject with certain expectations to be implied in fact unless specifically disclaimed. It is to be expected that damages for cognizable harm to the ordinary emotional sensibilities of any family member, in general, and known emotional sensibilities, in particular, will be recoverable for a breach of the funeral provider's obligation to exercise reasonable skill and care. "Consolation being the aim [of a contract for funeral services], what else would result from a breach of the agreement but mental anguish?" Jack Leavitt, *The Funeral Director's Liability for Mental Anguish,* 15 Hastings L.J. 464, 466 (1964).

1. The adjudication of all issues with respect to the children who did not experience the decay of their father's body through sight or smell may have been final when the court entered its order of dismissal prior to the first trial. *See* SCRA 1986, 1–054(C)(2) (Repl.Pamp.1991) (adjudication of all issues as to fewer than all parties is final absent express provision otherwise). If so, the dismissal of the claims of those children may be res judicata, but that question has not been raised, briefed, or argued. It is a question distinct from preservation of error and one we do not decide.

■ *—Mental distress in connection with exhumation is a general damage not requiring foreseeability.* Baca argues that exhumation is an exceptional circumstance because he could not foresee that it would occur, and that he should not be held liable for mental distress damages associated with the exhumation. The question of foreseeability arises in contract cases when determining whether the parties contemplated special damages, i.e., damages in which "items of loss [are] more or less peculiar to the plaintiff, which may not be expected to occur regularly to other plaintiffs in similar circumstances...." *Wall v. Pate,* 104 N.M. 1, 2, 715 P.2d 449, 450 (1986). Any peculiar circumstances must be known to the parties when they contracted in order for the plaintiff to recover special damages. *Id.* The emotional distress suffered by the plaintiffs, however, was perhaps the only damage to be expected from a breach of the contract to embalm, and was within the implied contemplation of the parties. An analysis of foreseeability of exhumation need not be done by this Court because the damages in this case are general, and, to be recoverable, they need only flow from the breach of a term of contract. "Under the contemplation of the parties test, the inquiry is not probability of occurrence but whether the contract implicitly or explicitly allocates the particular kind of loss to the defendant." Dobbs, *supra,* § 12.-4(7), at 98.

■ *—Contract was not limited to a satisfactory funeral service.* Baca argues that the parties contracted only for embalming sufficient for proper burial (and that the partial embalming satisfied the contract), not for embalming that should have prevented decay discovered by disinterment two to three weeks after death. We do not agree. The contract expressly called for "embalming". The promisees are entitled to the benefits to be received, no matter at what reasonable time the benefits as contracted for would be essential to the family's well-being. Disinterment for purposes of autopsy within fifteen days is not so remote in time as to be excluded from the purpose of embalming. An expert testified that complete embalming often preserved bodies for up to thirty-five years. Baca may not now claim that "embalming" means partial embalming sufficient for a funeral service.

■ *The court erred in directing a verdict on the issue of punitive damages.* Maria offered evidence to prove that Baca knew that the embalming was incomplete. She argues that the jury could have inferred from this evidence that Baca either intentionally failed to fully embalm or had wanton disregard of the family's rights, which would allow recovery of punitive damages. *See Romero v. Mervyn's,* 109 N.M. 249, 255, 784 P.2d 992, 998 (1989). Baca contends that Flores failed to preserve error by not requesting an instruction at trial or otherwise bringing error to the court's attention, and that she presented no facts to support punitive damages. The trial court, however, expressly dismissed the cause of action for punitive damages after a hearing, thus error was properly preserved.

In *Romero,* we stated:

[I]n the sense that malice and wantonness, interpreted broadly, suggest an absence either of a good faith reason or of an innocent mistake, they describe the conduct targeted by our punitive damages rule.

"Malice" as used in our punitive damages instruction *does not imply "actual malice"* or *"malice in fact" in the sense of an intent to harm.* Instead, malice, [is defined as] "the intentional doing of a wrongful act without just cause or excuse. This means that the defendant not only intended to do the act which is ascertained to be wrongful, but that he knew it was wrong when he did it."

109 N.M. at 255–56, 784 P.2d at 998–99 (quoting *Loucks v. Albuquerque Nat'l Bank,* 76 N.M. 735, 747, 418 P.2d 191, 199 (1966)) (citation omitted) (emphasis added). In *Construction Contracting & Management, Inc. v. McConnell,* 112 N.M. 371, 815 P.2d 1161 (1991), we stated that the purpose of punitive damages "is to punish and deter persons from certain conduct, [and] there must be some evidence of a culpable mental state." *Id.* at 375, 815 P.2d at 1165. A culpable mental state may be evidenced by overreaching, malicious, or wanton conduct, or an

intent to inflict harm, or conduct that violates community standards of decency. *Id.* In the case at bar, the jury could have determined that Baca represented that he would fully embalm the body and fraudulently led the family to believe that the body was fully embalmed even after he discovered that it was only partially embalmed, relying on the burial to hide the breach. That would have been an intentional act without just cause or excuse, with knowledge that the act itself was wrong. It is wanton to pull the wool over the eyes of promisees, believing that what they don't know won't hurt them. We reverse the directed verdict on the issue of punitive damages.

**■** *Reinstatement of Maria's breach of contract claim was not error.* Baca argues that under SCRA 1986, 1–015 (Repl. Pamp.1991), the trial court is not permitted to amend a former order sua sponte. We agree with Maria that the court simply reinstated her breach of contract claim as permitted under SCRA 1986, 1–054(C)(1) (Repl. Pamp.1991). Rule 54(c)(1) provides:

> [W]hen more than one claim for relief is presented in an action, ... the court may enter a final judgment as to one or more but fewer than all of the claims only upon an express determination that there is no just reason for delay. In the absence of such determination, *any order ... which adjudicates fewer than all the claims* shall not terminate the action as to any of the claims and the order ... *is subject to revision at any time before the entry of judgment adjudicating all the claims.*

(Emphasis added.) The trial court did not make an express determination that there was no just reason for delay in entering its order dismissing Maria's breach of contract claim. Therefore, the court had discretion to timely revise the order. Baca had opportunity to defend the breach of contract claim at the first trial and defended damages solely on that basis in the second trial. The court did not err in revising its former order, and Baca was not harmed by such revision.

**■** *Court did not err in admitting childrens' testimony.* At the second trial, the court permitted testimony from the Flores children regarding statements they made that their mother overheard. Maria offered this testimony to corroborate that she became aware of the condition of her husband's body and to show the effect of the statements upon her emotional well-being. Baca asserts that the statements were inadmissible hearsay because if the statements had not been true, they could not have formed a foundation for emotional distress for which Baca could be held responsible. However, Maria established the truth of the statements in the first trial with testimony regarding first-hand knowledge of the condition of Hipolito's body, as well as with photographs, neither of which were allowed in the second trial because liability already had been established. The court did not err in allowing the testimony to show Maria's knowledge and her state of mind. "Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned." 6 John H. Wigmore, *Evidence* § 1789, at 314 (Chadbourn rev. 1976).

**■** *Plaintiffs must prove severe emotional distress as an element of damages.* In actions sounding in negligence and solely for emotional distress, we have held that recovery is afforded for severe distress only. *See Ramirez v. Armstrong,* 100 N.M. 538, 541 n. 1, 673 P.2d 822, 825 n. 1 (1983) (holding that only damages for severe distress are recoverable for negligent infliction of emotional distress to a bystander), *overruled in part on other grounds by Folz v. State,* 110 N.M. 457, 797 P.2d 246 (1990); *Dominguez v. Stone,* 97 N.M. 211, 214–15, 638 P.2d 423, 426–27 (Ct.App.1981) (following Restatement (Second) of Torts section 46 cmt. j (1965), which states that cause of action for intentional infliction of emotional distress exists only for severe distress); *cf. Chavez v. Manville Prods. Corp.,* 108 N.M. 643, 647, 777 P.2d 371, 375 (1989) (holding damages for emotional distress recoverable in action for retaliatory discharge without stating whether distress must be severe). In *Ramirez,* we adopted the severity requirement in order to "effectively assure[ ] the possibility of recov-

ery by deserving claimants, while at the same time placing constraints on liability of defendants." 100 N.M. at 541, 673 P.2d at 825. In cases based on negligence, the severity requirement also serves as a threshold guarantee of genuineness. *See Folz,* 110 N.M. at 471, 797 P.2d at 260 (stating that the threshold requirements to establish the genuineness of a bystander claim includes allegation and proof of severe shock from contemporaneous perception).

■ Baca claims the trial court erred at the second trial by refusing to give a requested instruction that Maria was required to show severe emotional damage in order to recover. Maria argues that because her cause of action was based on breach of contract and not negligent infliction of emotional distress, the severity element is not required, citing to the principle that all incidental damages arising out of the breach of a contract are recoverable. Alternatively, she argues that if there is a severity requirement, Baca waived error by not requesting the instruction at the first trial where liability was established.

■ As we have determined, because of the nature of a funeral and burial contract, an emotional distress claim for the breach of such a contract would be within the contemplation of the parties.

"A party to a contract who is injured by another's breach of the contract is entitled to recover from the latter damages for *all* injuries ... reasonably ... said to have been foreseen, contemplated, or expected by the parties at the time when they made the contract...."

\*    \*    \*    \*    \*    \*

In [cases where the contract is personal and coupled with matters of mental concern or solicitude] the party sought to be charged is presumed to have contracted with reference to the payment of damages of that character in the event such damages should accrue on account of his breach of the contract.

*Lamm v. Shingleton,* 231 N.C. 10, 55 S.E.2d 810, 812–13 (1949) (quoting 15 Am.Jur. *Damages* § 51, at 449–50 (1938)) (emphasis added). As a matter of public policy, however, we believe that compensation for only serious mental distress from breach of contract should be implied in fact as within the contemplation of the parties to a funeral and burial contract. Grief plays an expected and welcome part of, and is ordinarily associated with, any funeral and burial service. Therefore, absent express terms to the contrary, the severity requirement serves in some measure to identify and separate the mental anguish and emotional distress that skilled and careful services of a funeral director are intended to allay. This policy is consistent with the principle stated in Restatement (Second) of Contracts Section 353 (1979): "Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." *See also Woodmen Accident & Life Ins. Co. v. Bryant,* 784 F.2d 1052, 1056–57 (10th Cir. 1986) (holding emotional distress for breach of contract not recoverable unless injury meets requirements of Section 353 or is proven to be within the contemplation of the parties).

■ Maria presented evidence of long-term, severe distress associated with the condition of her husband's body and her feelings that his body was disgraced and dishonored. Given the two successive verdicts of $500,000 and $100,000, the damages for emotional distress could hardly be considered as resting upon mild emotions. Therefore, although error was committed by failure to instruct that damages could be awarded only for severe distress, it is not inconsistent with substantial justice for this Court to disregard any error in the damage instruction. *See* SCRA 1986, 1–061 (Repl.Pamp.1991) (harmless error doctrine).

*Conclusion.* We reverse the judgment dismissing the breach of contract claims of the Flores children and remand for trial on the merits. We affirm the award of compensatory damages to Maria Flores and reverse the directed verdict in favor of Baca on the issue of punitive damages. Maria is entitled to a trial on the issue of punitive damages. However, Maria's compensatory damages are res judicata. If, for judicial economy, Maria's entitlement to punitive damages is tried

with the claims of the children, the court will be faced, on the one hand, with the need to instruct the jury that "[t]he amount [of punitive damages] awarded, if any, must be reasonably related to the ... [$100,000] damages given as compensation...." *See* SCRA 1986, 13–1827 (Repl.Pamp.1991) (punitive damages instruction). On the other hand, the court must avoid prejudice to Baca that may arise from the fact of the compensatory award to Maria. *See Sanchez v. Dale Bellamah Homes of New Mexico, Inc.*, 76 N.M. 526, 531, 417 P.2d 25, 29 (1966) (new trial limited to single issue of punitive damages only appropriate if parties not prejudiced). We are confident that the court, with the aid of counsel, will be able to fairly balance the interests that are thus in tension.

**IT IS SO ORDERED.**

BACA and FRANCHINI, JJ., concur.