Rick CAROTHERS and Cindy Carothers, individually and as next friends and guardians of Garrett Carothers, Plaintiffs–Appellees and Cross–Appellants,

v.

ARCHULETA COUNTY SHERIFF and Deputy Tom Gaskins, Defendants–Appellants and Cross–Appellees.

No. 04CA0762, 04CA0998.

Colorado Court of Appeals.
Division I.

June 15, 2006.

taken from the scene by emergency medical personnel. The complaint further alleged that the Sheriff had an agreement with the defendant property owners' association to handle complaints of dangerous or threatening dogs, but did not have proper equipment or personnel to do so; that the Sheriff rarely responded timely to complaints; and that Deputy Gaskins had not been properly trained and was not qualified for his position.

Plaintiffs asserted claims against Gaskins for extreme and outrageous conduct (claim six), and for willful and wanton conduct justifying punitive damages (claim eight). They also asserted a claim for damages for willful and wanton conduct against the Sheriff, based on the Sheriff's own acts or omissions and on a theory of respondeat superior (claim eight). Claim nine, for breach of contract against the Sheriff, was based on a theory that plaintiffs were third-party beneficiaries of the agreement between the Sheriff and the property owners' association to provide animal control services.

Lambdin & Chaney, LLP, L. Kathleen Chaney, Denver, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Doehling & Driscoll, P.C., Gary L. Doehling, Jeffrey L. Driscoll, Grand Junction, Colorado, for Defendant–Appellant and Cross–Appellee Archuleta County Sheriff.

Vaughan & DeMuro, Gordon L. Vaughan, Mary Kominek Linden, Colorado Springs, Colorado, for Defendant–Appellant and Cross–Appellee Deputy Tom Gaskins.

VOGT, J.

Defendants, Archuleta County Sheriff and Deputy Tom Gaskins, appeal the trial court's orders denying their motions to dismiss claims brought by plaintiffs, Rick Carothers and Cindy Carothers. Plaintiffs cross-appeal the trial court's order dismissing their claims against the Sheriff individually. We dismiss the appeal in part, affirm in part, reverse in part, and remand for further proceedings.

Plaintiffs brought this action against defendants and other parties after their eight-year-old son sustained serious injuries in a dog attack. According to the complaint, a neighbor had seen the dogs running loose and acting aggressively and had called the Sheriff. Deputy Gaskins was dispatched, but he did not immediately respond, choosing instead to "tend to personal matters" and arriving only after the injured child had been

Gaskins and the Sheriff moved for dismissal pursuant to C.R.C.P. 12(b)(1) and (5), asserting governmental immunity. The trial court denied the motions "except as to the extent any claim for willful and wanton conduct is pled against Defendant Sheriff individually."

In its initial order of March 3, 2004, the trial court observed that both defendants were asserting immunity under the Colorado Governmental Immunity Act (CGIA), § 24-10-101, et seq., C.R.S.2005, but that, except for the issue of sufficient notice under the CGIA, the case presented only questions of qualified immunity, not sovereign immunity. Thus, the court concluded, the issue to be resolved pursuant to C.R.C.P. 12(b)(5) was whether plaintiffs had sufficiently pled allegations of willful and wanton conduct. The court then concluded that (1) the complaint sufficiently alleged willful and wanton conduct on the part of Gaskins; (2) the outrageous conduct claim against Gaskins would not be dismissed because reasonable persons could differ on whether Gaskins' conduct was outrageous; (3) the Sheriff had not waived sovereign immunity as to the acts and omissions set forth in the complaint, but he could

nevertheless be vicariously liable under § 30–10–506, C.R.S.2005, for the willful and wanton conduct of his deputies; (4) plaintiffs had sufficiently pled such respondeat superior liability; (5) the breach of contract claim was not one that could lie in tort and therefore was not barred under the CGIA; and (6) the notice given by plaintiffs pursuant to the CGIA was sufficient.

On April 9, 2004, after plaintiffs filed a third amended complaint and defendants again moved for dismissal, the trial court entered a second order. In it the court adopted its March 3, 2004, order and, as pertinent here, found that the CGIA "create[d] a tort for willful and wanton conduct" that was sufficiently pled against Gaskins. The court subsequently certified its two orders as final pursuant to C.R.C.P. 54(b).

## GASKINS' APPEAL

■ Gaskins challenges, on various grounds, the trial court's refusal to dismiss plaintiffs' claims against him. We conclude that, with the exception of his contention regarding the sufficiency of plaintiffs' notice, his claims are not properly before us for review. We therefore dismiss his appeal except as to the notice issue.

### I.

■ Absent an exception provided by rule or statute, a final judgment is a jurisdictional prerequisite to appellate review in this court. See § 13–4–102(1), C.R.S.2005; *Steven A. Gall, P.C. v. District Court*, 965 P.2d 1268 (Colo.1998); *Yadon v. Lowry*, 126 P.3d 332 (Colo.App.2005).

### A.

■ Unless its sovereign immunity has been waived, a public entity is immune from suit under the CGIA for injuries that lie in tort or could lie in tort. A trial court's ruling on a question of sovereign immunity raised by a public entity or public employee is a final, appealable judgment. See §§ 24–10–106, 24–10–108, 24–10–118(2.5), C.R.S.2005; *City of Lakewood v. Brace*, 919 P.2d 231 (Colo.1996).

■ A public employee is immune from liability on tort claims arising out of an act or omission of the employee during the performance of his or her duties and within the scope of his or her employment, unless the act or omission causing such injury was willful and wanton. See §§ 24–10–105, 24–10–118(2)(a), C.R.S.2005; *Richardson v. Starks*, 36 P.3d 168 (Colo.App.2001).

■ The immunity afforded to public employees under §§ 24–10–105 and 24–10–118(2)(a) is a qualified immunity, and it is lost if the employee's act was "willful and wanton." Whether conduct was willful and wanton must generally be determined at trial. Thus, when a trial court refuses to dismiss on the basis of allegations of willful and wanton conduct that would eliminate the employee's immunity, its order is not immediately appealable, and we are without jurisdiction to consider such an appeal. *Richardson v. Starks, supra; see also City of Lakewood v. Brace, supra.*

■ However, when a public employee challenges the sufficiency of the plaintiffs' notice of claim, the challenge raises an issue of sovereign immunity, and the trial court's decision is immediately appealable pursuant to § 24–10–118(2.5). *Bresciani v. Haragan*, 968 P.2d 153 (Colo.App.1998).

■ A trial court's order denying a motion to dismiss pursuant to C.R.C.P. 12(b)(5) is likewise not an appealable final order. *Podboy v. Fraternal Order of Police*, 94 P.3d 1226 (Colo.App.2004).

### B.

As noted, the trial court declined to dismiss plaintiffs' claims against Gaskins because the willful and wanton conduct claim had been sufficiently pled and because a reasonable jury could find outrageous conduct based on the facts alleged. Under the authorities set forth above, these rulings are not presently appealable.

Additionally, we do not agree with Gaskins that, under *Finnie v. Jefferson County School District R–1*, 79 P.3d 1253 (Colo. 2003), the trial court's ruling that the CGIA "creates a tort for willful and wanton con-

duct" raises an issue of sovereign immunity that is immediately appealable by him under § 24–10–118(2.5). *Finnie* was an appeal from an order granting a school district's motion to dismiss for lack of proper notice, and the trial courts ruling on that issue was immediately appealable. *See Bresciani v. Haragan, supra.* We are aware of no authority that would give us jurisdiction to review Gaskins' challenge to the ruling by the trial court here.

However, this ruling, as well as the parties' arguments regarding the existence or nonexistence of a duty, also bears on the Sheriff's potential liability—an issue properly before us for review. We thus address some of Gaskins' contentions, which are incorporated by reference in the Sheriff's appeal, later in this opinion.

### C.

■ Additionally, the issues raised by Gaskins are not presently reviewable based on the trial court's subsequent certification of its orders as final pursuant to C.R.C.P. 54(b).

C.R.C.P. 54(b) permits a court, in an action involving multiple parties or multiple claims for relief, to direct entry of a final judgment as to fewer than all the claims or parties. The rule provides an exception to the general rule that an entire case must be resolved by a final judgment before an appeal is brought. Accordingly, our jurisdiction to entertain the appeal of a decision so certified depends upon the correctness of the certification. *Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982).

■ A trial court may issue a C.R.C.P. 54(b) certification only if three requirements are met: (1) the decision certified must be a ruling upon an entire claim for relief; (2) the decision certified must be final in the sense of an ultimate disposition of an individual claim; and (3) the trial court must determine that there is no just reason for delay in entry of a final judgment on the claim. While the "no just reason for delay" question is committed to the trial court's discretion, that court's determinations regarding the other two requirements are "not truly discretionary." The trial court cannot, in the exercise

of its discretion, treat as final that which is not final. *Lytle v. Kite,* 728 P.2d 305, 308 (Colo.1986); *see also Harding Glass Co., supra.* Thus, we review de novo the legal sufficiency of the trial court's C.R.C.P. 54(b) certification. *Harding Glass Co., supra.*

Here, the orders denying the motions to dismiss do not finally dispose of any claim for relief or resolve all claims against any defendant. Citing federal cases, Gaskins urges us to give particular weight to the trial court's determination that there is no just reason to delay review of all issues. However, Colorado Supreme Court precedent requires that the first two prongs of the three-part test discussed above be satisfied before C.R.C.P. 54(b) certification is proper. Those requirements are not satisfied here; thus, C.R.C.P. 54(b) certification was improper and does not give us jurisdiction to review any otherwise nonreviewable issues raised by Gaskins. *See Musick v. Woznicki,* 136 P.3d 244, 250 (Colo. 2006)(C.R.C.P. 54(b) certification "must be correct in order for jurisdiction to shift to an appellate court").

### II.

■ Gaskins contends the trial court erred in concluding that plaintiffs' notice of claim substantially complied with § 24–10–109, C.R.S.2005. We disagree.

Section 24–10–109 requires, as a jurisdictional prerequisite to suit, that a person claiming to have been injured by a public entity or public employee file a written notice within 180 days after the date of discovery of the injury. The notice is to contain the claimant's, and the claimant's attorney's, name and address; a "concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of"; the name and address of any public employee involved, if known; a concise statement of the nature and extent of the injury suffered; and a statement of the amount of monetary damages requested. Section 24–10–109(2), C.R.S.2005.

■ The 180–day requirement in § 24–10–109 is strictly construed, and failure to file a notice of claim within that time

period bars any action. Section 24–10–118(1)(a), C.R.S.2005; *East Lakewood Sanitation District v. District Court*, 842 P.2d 233 (Colo.1992). However, the provisions of § 24–10–109(2), regarding the contents of the notice, are satisfied if the claimant has substantially complied with their requirements. *Woodsmall v. Regional Transportation District*, 800 P.2d 63 (Colo.1990). Substantial compliance in this context requires the claimant to make a good faith effort to include within the notice, to the extent the claimant is reasonably able to do so, each item of information listed in § 24–10–109(2). *Woodsmall v. Regional Transportation District, supra; see Bresciani v. Haragan, supra.*

The notice given in this case included the names and addresses of plaintiffs and their attorneys; described the attack and the injuries suffered by plaintiffs' son; enumerated the various losses for which damages were being sought; identified the Sheriff and Deputy Gaskins; recounted the history of the Sheriff's failure to respond to complaints about dogs at large; and stated:

> The Sheriff's office was completely unresponsive to the citizens' concerns and ignored repeated requests for protection for their safety despite knowing that [the property owners' association] had fired their animal control officer some two months prior to [the son's] mauling. Moreover, upon information and belief, the officer dispatched to respond to the mauling was not adequately trained and is reported [to have] delayed responding while he tended to personal matters.

We agree with the trial court that the notice substantially complied with the requirements of § 24–10–109(2), and that it gave both defendants the information necessary to investigate, remedy any problem, and make adequate financial arrangements to meet any potential liability. Although the words "willful and wanton" were not used, the factual description in the notice was sufficient to apprise both Gaskins and the Sheriff that plaintiffs would seek to hold them liable for willful and wanton conduct and that they could be subject to exemplary damages. *See Bresciani v. Haragan, supra* (even though

notice did not specifically reference willful and wanton conduct, assertion that defendants had unnecessarily damaged and destroyed plaintiffs' residence constituted sufficient notice that damage may have been caused by willful and wanton conduct). Thus, the trial court did not err in declining to dismiss plaintiffs' complaint based on insufficient notice.

### SHERIFF'S APPEAL AND PLAINTIFFS' CROSS-APPEAL

#### I.

▮ In order to address the issues presented in the Sheriff's appeal and plaintiffs' cross-appeal, we must first determine whether plaintiffs' claims against the "Archuleta County Sheriff" were claims (1) only against the Sheriff's Department as a public entity and the Sheriff in his official capacity as head of that entity, or (2) against the Sheriff as an individual as well.

If the action is determined to be against the Sheriff in his official capacity, it is effectively an action against his office, and the immunity principles applicable to suits against the state or against public entities apply. *State v. Nieto*, 993 P.2d 493 (Colo. 2000) (although state officials literally are persons, when a plaintiff sues a state official in his or her official capacity, he is actually suing the official's office); *see also Ainscough v. Owens*, 90 P.3d 851 (Colo.2004)(official capacity suit is merely another way of pleading an action against the official's entity); *Corsentino v. Cordova*, 4 P.3d 1082 (Colo.2000)(county sheriff, sued in official capacity, asserted sovereign immunity).

Conversely, as discussed above, public employees sued in their individual capacities for willful and wanton conduct do not enjoy sovereign immunity. Such individuals enjoy only a qualified immunity that is waived if the conduct at issue was willful and wanton. *Middleton v. Hartman*, 45 P.3d 721 (Colo. 2002); *see* §§ 24–10–105, 24–10–118(2)(a).

Where, as here, a complaint does not clearly specify whether an official is sued personally, in his or her official capacity, or both, we must examine the entire complaint and the

course of proceedings to make that determination. *See State v. Nieto, supra; County of Adams v. Hibbard,* 918 P.2d 212 (Colo.1996).

Here, the second amended complaint that was the subject of defendants' motions to dismiss identified the named defendant, Archuleta County Sheriff, as the Archuleta County Sheriff's "Department," located at a street address in Pagosa Springs, Colorado. The individual occupying that office is nowhere identified, and the factual allegations generally refer to the Sheriff as "it."

In the third amended complaint, filed after the court entered its initial, March 3, 2004, order denying the motions to dismiss, the caption continues to characterize the defendant as "Archuleta County Sheriff," but that defendant is now identified as "Tom Richards," at the address previously given for the Sheriff's Department. As in the prior complaints, the factual allegations—including those paragraphs cited by plaintiffs on appeal as evidence of "individual" claims against Sheriff Richards—continue to refer primarily to the responsibility of the Sheriff's Department, although some allegations now refer to the Sheriff as "he" rather than "it." However, no allegations specifically identify misconduct by Tom Richards individually, and no damages are sought from him individually.

As for the various claims for relief, the only claim that could arguably be asserted against the Sheriff as an individual, claim eight, includes two substantive . allegations:

> 221. The acts or omissions of the Archuleta County Sheriff, its deputies and/or employees, including Captain Grandchamp and Deputy Tom Gaskins, were willful and wanton.
>
> 222. The Archuleta County Sheriff is liable for his own acts or omissions and liable under the doctrine of respondeat superior for the acts [or] omissions of his deputies and/or employees.

When the trial court asked plaintiffs' counsel, at oral argument on the motions to dismiss, whether plaintiffs were proceeding "against Sheriff Richards as the sheriff as the entity, as the office, or as a public employee," plaintiffs' counsel responded, "both." Nevertheless, in their response to the Sher-

iff's motion to dismiss, plaintiffs clearly were focused on the potential responsibility of the Sheriff's Department or, at most, of the Sheriff in his official capacity as the head of that department.

Upon consideration of the various complaints and the course of proceedings, we conclude that plaintiffs' claims were not claims against the Sheriff in his individual capacity. Even after plaintiffs identified Tom Richards in their third amended complaint, their factual allegations clearly describe acts or omissions of a public entity, not of an individual. We thus analyze the remaining issues consistent with that conclusion.

## II.

Given our conclusion, we necessarily reject plaintiffs' contention on cross-appeal that the trial court committed reversible error when it ruled that they had not stated a claim against the Sheriff individually for willful and wanton conduct. There were no claims against the Sheriff as an individual. Thus, the trial court's statement that it was denying the motions to dismiss "except as to the extent any claim for willful and wanton conduct is pled against Defendant Sheriff individually" does not affect plaintiffs' substantial rights, and we need not further address their cross-appeal. Plaintiffs' claims against the Sheriff as a public entity are addressed below.

## III.

■ The Sheriff contends that the trial court erred in refusing to dismiss plaintiffs' eighth claim for relief, alleging willful and wanton conduct, based on its conclusion that the Sheriff was liable under § 30–10–506 for the willful and wanton conduct of his subordinates. We agree.

### A.

The Sheriff is a public entity under § 24–10–103(5), C.R.S.2005, and is thus entitled to raise a defense of sovereign immunity under the CGIA. *See Podboy v. Fraternal Order of Police, supra; Tunget v. Board of County Commissioners,* 992 P.2d 650 (Colo.App.

1999). As set forth above, a trial court's order denying relief on the basis of sovereign immunity is immediately appealable. *See* § 24–10–108; *Richardson v. Starks, supra.*

A public entity is entitled to immunity under § 24–10–106 unless the claimant's injuries result from one of the specific circumstances—such as operation of a motor vehicle or the presence of various dangerous conditions—enumerated in that statute for which sovereign immunity is waived. If the conduct does not fall within one of the six § 24–10–106 waiver categories, a public entity cannot be deemed to have waived sovereign immunity by virtue of its own willful and wanton conduct. *Richardson v. Starks, supra; see Middleton v. Hartman, supra; State Department of Highways v. Mountain States Telephone & Telegraph Co.*, 869 P.2d 1289 (Colo.1994).

We do not agree with plaintiffs that we may reach a contrary conclusion here based on the General Assembly's 1992 amendments to the CGIA notice provisions. *See* 1992 Colo. Sess. Laws, ch. 172, §§ 24–10–109(1) & 24–10–118(1)(a) at 1117–19. Although notice is now required even if willful and wanton conduct is alleged, plaintiffs cite no legislative history or other authority to support their contention that these amendments evidence a public policy in favor of holding public entities liable for their own willful and wanton conduct.

Further, a public entity is not liable for the willful and wanton conduct of its employees unless the conduct falls within one of the waiver provisions of § 24–10–106. *Ramos v. City of Pueblo*, 28 P.3d 979 (Colo.App.2001).

Conversely, if the conduct at issue falls within one of the categories for which sovereign immunity has been waived, the public entity may be vicariously liable for the misconduct of its employees. *See Tunget v. Board of County Commissioners, supra* (where sovereign immunity was waived in case involving operation of a motor vehicle by a public employee, sheriff would be responsible under § 30–10–506 for injuries resulting from deputy's negligent driving); *Cordova v. Pueblo West Metropolitan District*, 986 P.2d 976 (Colo.App.1998)(where sovereign immunity was waived for operation of motor vehicle, sheriff could be liable under doctrine of respondeat superior for conduct of deputy who was driving patrol car), *aff'd sub nom. Corsentino v. Cordova, supra.*

### B.

There is no allegation that the conduct at issue here falls within any of the waivers of sovereign immunity set forth in § 24–10–106. Citing § 30–10–506, *Castaldo v. Stone*, 192 F.Supp.2d 1124 (D.Colo.2001), and *Peterson v. Arapahoe County Sheriff*, 72 P.3d 440 (Colo.App.2003), the trial court nevertheless concluded that plaintiffs had sufficiently pled a claim against the Sheriff under the doctrine of respondeat superior for the willful and wanton acts or omissions of his deputies. Upon de novo review of that conclusion, *see Tidwell v. City & County of Denver*, 83 P.3d 75 (Colo.2003), we agree with the Sheriff that the trial court erred.

Section 30–10–506 provides, as relevant here, that a "sheriff and his sureties shall be responsible on his official bond for the default or misconduct of his undersheriff and deputies." As noted above, § 30–10–506 was cited in *Tunget v. Board of County Commissioners, supra*, in support of the proposition that a sheriff would be responsible for his deputy's negligent operation of a motor vehicle, an action for which sovereign immunity was waived. However, as the trial court in this case recognized, § 30–10–506 does not itself afford a basis for a tort remedy against a public entity or employee, and it does not, by itself, create a duty to act. *See Castaldo v. Stone, supra* (rejecting contention that § 30–10–506 created duty on part of Jefferson County Sheriff's Department employees to investigate threats preceding Columbine shooting).

Nor, in our view, can the statute afford a basis for holding a sheriff liable, on a respondeat superior theory, for the willful and wanton conduct of a deputy in circumstances in which sovereign immunity has not been waived. Such a conclusion would be inconsistent with supreme court opinions construing the predecessor to § 30–10–506 as imposing liability on a sheriff only for the official acts of his deputies. *See McCartney v. Foster,*

150 Colo. 537, 374 P.2d 704 (1962); *Johnson v. Enlow*, 132 Colo. 101, 286 P.2d 630 (1955). It would also be inconsistent both with the plain language of the statute, which refers only to "default or misconduct" of a sheriff's employees, and with public policy disfavoring the imposition of liability on public entities for the willful and wanton conduct of their employees. *See* § 24-10-114(4), C.R.S.2005 (except in designated circumstances, public entity shall not be liable "either directly or by indemnification for punitive or exemplary damages or for damages for outrageous conduct"); *City & County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 763 (Colo. 1992)(CGIA "evidences a legislative intent to protect the state, its political subdivisions, and public employees against unlimited tort liability that would impair their ability to provide essential public services"); *Ramos v. City of Pueblo, supra.*

A contrary conclusion is not required based on *Peterson v. Arapahoe County Sheriff, supra*, on which plaintiffs rely. Although the *Peterson* division cited *Tunget, supra*, and § 30-10-506 for the proposition that the Arapahoe County Sheriff could be liable for the willful and wanton conduct of its deputies, it did so in a case in which the sheriff had arguably violated a constitutional obligation to take the plaintiff into custody to protect him from further beatings by bounty hunters. In that circumstance, the division concluded, the plaintiff had properly stated a claim against the sheriff under 42 U.S.C. § 1983. We decline to extend *Peterson* to the situation presented here, which, as discussed below, does not involve a breach of a constitutional obligation to plaintiffs.

The trial court accordingly erred in concluding that the Sheriff could be liable to plaintiffs on their eighth claim for relief. On remand, the court shall dismiss this claim against the Sheriff.

## IV.

The Sheriff also incorporates by reference defendant Gaskins' arguments regarding the sufficiency of plaintiffs' notice of claim. We reject this contention for the reasons explained above in addressing Gaskins' appeal.

## V.

■ The Sheriff further contends that the trial court erred in refusing to dismiss plaintiffs' breach of contract claim. We disagree.

As noted above, plaintiffs alleged that Archuleta County had entered into a contract with the property owners' association of which plaintiffs were members. In response to defendants' motions to dismiss, they submitted a copy of an agreement (dated January 13, 2003, but allegedly "similar" to the agreement in existence at the time their son was attacked) which provided, as relevant here, that the "County, through the Sheriff, will provide an animal control officer to provide normal, routine animal control services in the Pagosa Lakes area"; that the "Sheriff shall assign an officer to supervise and coordinate the animal control services for the Pagosa Lakes community"; that the Sheriff's officer would respond to emergency calls in the Pagosa Lakes area; and that the County and the "Sheriff shall ensure that the Pagosa Lakes Officer is properly trained and qualified to perform the Animal Control Services." Plaintiffs alleged in their complaint that they were third-party beneficiaries of the contract and suffered injuries as a result of the Sheriff's breach of the contract.

### A.

■ The CGIA does not apply to actions grounded in contract. *Berg v. State Board of Agriculture*, 919 P.2d 254 (Colo.1996); *Adams ex rel. Adams v. City of Westminster*, 140 P.3d 9 (Colo.App. 2005). However, the form of the complaint does not determine whether the claim is based in tort or contract. Rather, the dispositive question in determining whether the CGIA bars a plaintiff's claim is whether the claim is a tort claim or could be a tort claim. If the action sounds in tort, the existence of a contractual relationship between the parties does not change the nature of the action. *Berg, supra; Adams, supra.*

The essential difference between a tort obligation and a contract obligation is the source of the parties' duties. Contract obligations arise from promises made between

parties. Tort obligations generally arise from duties imposed by law, and tortious conduct is a breach of a duty imposed by law, not by contract. *Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256 (Colo.2000); *see Adams v. City of Westminster, supra* (plaintiff's claims for breach of contract and promissory estoppel were not barred by CGIA, where plaintiff could not show that city breached a duty imposed by law to protect all citizens from risk of harm).

Consistent with this distinction, Colorado cases have recognized that a "breach of contract" claim is in fact one that could sound in tort if it involves breach of an obligation imposed by law, not by contract. *See Patzer v. City of Loveland,* 80 P.3d 908 (Colo.App.2003)(rejecting contention that city's issuance of building permit created contractual obligation or would support a promissory estoppel claim, where plaintiffs' claim was essentially one for negligent misrepresentation); *CAMAS Colorado, Inc. v. Board of County Commissioners,* 36 P.3d 135, 138 (Colo.App.2001)("In determining whether a claim is contractual or lies in tort, a court should examine whether the claim and the duty allegedly breached arise from the terms of the contract itself."); *Morrison v. City of Aurora,* 745 P.2d 1042 (Colo.App.1987)(plaintiffs' breach of contract claim, alleging that city had not complied with contractual duty to design underground pipe properly, could lie in tort, because city had common law tort duty to design pipe with reasonable care and skill).

Here, the Sheriff denies owing any animal-control-related "duty" to plaintiffs at common law or by statute, and we are unaware of any authority for imposing such a duty. Indeed, the law is to the contrary. *See Addington v. Town of Littleton,* 50 Colo. 623, 115 P. 896 (1911)(failure of city to enforce ordinance did not render city liable for injuries to pedestrian bitten by dog that was running at large); *Ochoa v. Sherman,* 534 P.2d 834 (Colo.App. 1975)(not published pursuant to C.A.R. 35(f))(municipality could not be held liable, on theory of negligent enforcement of ordinance, for injuries resulting from attack by vicious dog); *see also Board of County Commissioners v. Moreland,* 764 P.2d 812 (Colo.1988)(plaintiff had no remedy for injuries suffered after county failed to require proper guardrail, absent any grounds for finding a duty on part of county to do so); *Leake v. Cain,* 720 P.2d 152 (Colo.1986)(duty of public entity in negligence action is determined in same manner as if entity were a private party; because plaintiffs did not establish that police officers owed duty to plaintiffs' decedents, officers were entitled to dismissal); *Solano v. Goff,* 985 P.2d 53 (Colo.App.1999)(sheriff who supervised inmate on work crew owed no legal duty to victim who was murdered by inmate).

Nor can tort liability be deemed to exist here on a theory that, as the trial court found in its April 9, 2004, order, "the CGIA creates a tort for willful and wanton conduct."

Whether the conduct at issue was "willful or wanton" is relevant to the threshold inquiry of whether a public employee is entitled to immunity under the CGIA. It also affects the potential liability of the public entity for the defense costs of its employees. *See* §§ 24–10–105, 24–10–110, 24–10–118, C.R.S. 2005. However, even if the conduct at issue can be characterized as willful and wanton, so as to avoid application of the CGIA, the plaintiff must nevertheless allege a cognizable claim for relief, and must prove the elements of that claim at trial, in order to be entitled to recovery. *See State Department of Highways v. Mountain States Telephone & Telegraph Co., supra; Richardson v. Starks, supra; see also Castaldo v. Stone, supra* (dismissing claims against sheriff defendants where there was no substantive theory on which defendants could be found liable to plaintiffs). Thus, a bare allegation of willful and wanton conduct will not provide a basis for a damages award; rather, plaintiffs must allege and prove that they are entitled to damages on some cognizable substantive theory of liability.

### B.

The Sheriff nevertheless argues that the breach of contract claim here should be deemed a claim that could lie in tort because plaintiffs seek compensation for personal injuries. As the Sheriff correctly notes, the nature of the injury claimed and the relief

sought have been the focus of numerous cases on this issue. *See City of Colorado Springs v. Conners,* 993 P.2d 1167 (Colo. 2000) (discussing cases); *Adams v. City of Westminster, supra,* 140 P.3d at 10 ("cases interpreting the [C]GIA generally support the view that governmental immunity is immunity from actions seeking compensatory damages for personal harms or injuries"). However, we do not view these cases as ending the inquiry in the particular circumstances presented here.

The claim in this case is that the Sheriff breached an agreement to provide animal protection services that, if properly carried out, would allegedly have prevented the injuries for which recovery is sought. In these unique circumstances, we conclude that the nature of the relief sought cannot convert the breach of contract claim into a tort claim absent any articulable tort or statutory duty that was breached.

Noneconomic damages are available in contract breach actions in extraordinary contractual circumstances where such damages are foreseeable at the time of contracting and the breaching party's conduct was willful and wanton. *See Giampapa v. American Family Mutual Insurance Co.,* 64 P.3d 230 (Colo.2003); *Brossia v. Rick Construction Ltd. Liability Co.,* 81 P.3d 1126 (Colo. App.2003).

In the case of certain types of contracts for services, it is foreseeable that failure to provide the services may cause personal injury to a third-party beneficiary, who may then have a cause of action in contract for injuries proximately caused by that failure. *See Flores v. Baca,* 117 N.M. 306, 871 P.2d 962 (1994)(plaintiffs could seek mental distress damages caused by failure to embalm their decedent's body properly, as required by contract to provide funeral services); *see also Robinson Helicopter Co. v. Dana Corp.,* 34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268, 273 (2004)("Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury ...."); *Brown v. National Supermarkets, Inc.,* 679 S.W.2d 307 (Mo.Ct.App.1984) (supermarket patron, injured by assailant in parking lot, could sue for damages as third-party beneficiary of contract between supermarket and security service).

Here, if the existence of a contract with the Sheriff is established and the requisite showings of foreseeability and willful and wanton conduct are met, plaintiffs may be able to establish their right to recover damages as third-party beneficiaries of that contract. While we express no opinion as to their ultimate ability to do so, we conclude the trial court did not err in refusing to dismiss their breach of contract claim.

### CONCLUSION

The appeal of Deputy Gaskins is dismissed as to all issues except the issue regarding the sufficiency of plaintiffs' notice of claim. The trial court's orders are reversed to the extent they determine that the Sheriff could be liable on claim eight on a theory of respondeat superior, and to the extent they determine that the CGIA creates a separate tort of willful and wanton conduct. In all other respects, the orders are affirmed. The case is remanded for dismissal of claim eight against the Sheriff and for further proceedings consistent with this opinion.

Judge MÁRQUEZ and Justice ROVIRA * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.